**In re William F. ANTONICK, Suzanne Antonick, Debtors.**

**Bankruptcy No. 2–89–00146.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

Feb. 22, 1991.

Lee C. Mittman, Columbus, Ohio, for debtors.

Nora E. Jones, Schottenstein, Zox & Dunn, Columbus, Ohio, Chapter 7 Trustee.

Thomas R. Merry, Schottenstein, Zox & Dunn, Columbus, Ohio, for trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER ON MOTION TO VACATE

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court on the debtors' motion to vacate an order entered by default on December 7, 1990. The motion has been opposed by the Chapter 7 trustee. An evidentiary hearing was held on February 11, 1991, following which the matter was deemed submitted for decision.

The Court has jurisdiction over this case pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This matter is a core proceeding which the Court may hear and determine under authority of 28 U.S.C. § 157(b)(1), and (b)(2)(A), (E) and (O).

### II. *Findings of Fact*

A. Facts Underlying the Motion to Vacate

The debtors filed their joint case under Chapter 7 of the Bankruptcy Code on January 9, 1989. William B. Logan was appointed interim trustee on January 12, 1989. Following Logan's rejection of the appointment, Nora E. Jones was appointed as successor interim trustee. Jones became case trustee ("Trustee") upon conclusion of the meeting of creditors held pursuant to §§ 341 and 343 of the Bankruptcy Code. By order entered August 14, 1989, the Court appointed the Trustee's law firm of Schottenstein, Zox & Dunn as her counsel.

On November 8, 1990, the Trustee filed a motion for turnover ("Turnover Motion"). The Turnover Motion requested the "turnover [of] $17,519.62, said amount representing nonexempt cash-like assets as well as the real estate commissions earned pre-petition but paid post-petition." The Turn-

over Motion was served by regular U.S. Mail on the debtors and their case attorney, Lee Mittman. Under the local bankruptcy rules, the debtors had twenty days to file a written response to the Turnover Motion.

On November 21, 1990, the bankruptcy clerk's office scheduled the Turnover Motion to be heard on January 7, 1991. Notice of the hearing was mailed on that date to all interested parties. On December 5, 1990, after the twenty-day time period had expired, the Trustee submitted to the Court a proposed Order for Turnover. The Order for Turnover specifically included a finding "that no responsive filing or memorandum has been filed and that the response time to the motion expired on November 29, 1990." There being no written opposition, the Court signed and entered the Order for Turnover on December 6, 1990, thereby ordering turnover to the Trustee of the sum of $17,519.62, plus interest.

Unaware that the Order for Turnover had been entered, the debtors, on December 10, 1990, filed a memorandum in opposition to the Turnover Motion. On December 13, 1990, and without knowledge that the debtors had filed an opposing memorandum, the Court vacated the hearing date on the Turnover Motion. The debtors, on December 14, 1990, filed a motion to vacate ("Motion to Vacate") the Order for Turnover.

The debtors seek relief from the Court's judgment pursuant to Rule 60(b)(1) and (6) of the Federal Rules of Civil Procedure, made applicable to bankruptcy cases by Bankruptcy Rule 9024. They claim that the Trustee was required to provide them with notice and an opportunity for hearing pursuant to Bankruptcy Rule 9014 and this Court's established practice. Such notice would include a statement advising the debtors of the filing of the Turnover Motion, and of their right to respond and request a hearing.

Mittman claims that his mistaken belief that the debtors had thirty days, not twenty, to file a written opposition to the Turnover Motion is an additional basis to grant the relief requested. Mittman notes further that the debtors' move from one resi-

dence to another, without his knowledge, delayed him in meeting with the debtors and responding to the Turnover Motion. Mittman believed, at all times, that the debtors had until December 10, 1990, to file a response to the Turnover Motion and request a hearing.

The Trustee asserts that the last date on which the debtors could file a written response was December 3, 1990. When no response was filed by that date, the Trustee complied with her duty under Local Bankruptcy Rule ("LBR") 5.11 and submitted a proposed order granting the relief requested. The order was predicated on the lack of opposition to her motion within the twenty-day period provided by LBR 5.4(b). The Trustee asserts that she simply followed this Court's published local rules, and that Mittman's assertions of mistake and excusable neglect fall short of the standard for relief under Rule 60(b)(1) and (6). The parties apparently agree that the Order for Turnover constitutes a default judgment.

## B. Facts Underlying the Motion for Turnover

The evidence established that William F. Antonick, one of the debtors, was employed by Jeffrey R. Yocca Builder, Inc. The employment agreement between Yocca and Antonick ("Debtor") describes the Debtor as a salesperson. The Debtor's statement of financial affairs, filed with this Court, also discloses his occupation as a "home sales person." The Debtor claims that he was a "home servicer," by which he means he consulted with Yocca's customers during all phases of construction of their homes.

Pursuant to the employment agreement, Yocca advanced the Debtor the sum of $1,538.46 every two weeks as a draw against earned commissions. Commissions were earned at the rate of 1.5 per cent of the gross sales price of each home sold by the Debtor where he procured the sale. The commission was deemed earned at closing, *i.e.* the time of sale. The Debtor also could earn non-commission income by servicing customers. This service fee like-

wise was earned as of the time of closing. Thus, although the Debtor is not a licensed realtor, he could, and apparently did, earn commission income from the sale of homes built and/or owned by Yocca. As of the filing date of the petition, the Debtor had a negative balance of $12,996.03 in his draw account.

The debtors were entitled to receive certain tax refunds at the time the petition was filed. These refunds represented amounts the debtors credited from their 1988 federal income tax refund to their 1989 tax liability to cover an anticipated gain from the sale of their residence. Mittman now admits that all or a substantial portion of these refunds should be turned over to the Trustee as property of the estate.

### III. *Conclusions of Law*

■ Rule 60(b) provides the following grounds for setting aside a default judgment:

On motion and upon such terms as are just, the court may relieve a party ... from a final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Thus, Rule 60(b) sets forth the reasons upon which the Court *may* relieve a party from a final judgment or order.

The Sixth Circuit Court of Appeals has previously noted the following distinction between the Rule 55(c) standard for setting aside an *entry of default* and the Rule 60(b) standard for setting aside *default judgments:* "[a] *default* can be set aside under Rule 55(c) for 'good cause shown,' but a default that has become final as a *judgment* can be set aside only under the stricter Rule 60(b) standards for setting aside final, appealable orders." *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 398 (6th Cir.1980) (quoting *Jackson v. Beech*, 636 F.2d 831, 835 (D.C.Cir.1980) (emphasis in original)); *see also Shepard Claims Service, Inc. v. Darrah*, 796 F.2d 190 (6th Cir.1986); *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839 (6th Cir.1983). The motion to vacate seeks to set aside a final judgment or order entered by default; thus, this Court is bound to apply the more stringent standards of Rule 60(b).

In *INVST,* the Sixth Circuit examined Rule 60(b) and followed its previous decision in *United Coin Meter,* which set forth three factors essential to a determination of the merits of a motion to vacate a default judgment. *See United Coin Meter,* 705 F.2d 839 (6th Cir.1983). Guided by its decision in *United Coin Meter,* the court of appeals concluded that the outcome of a motion to vacate a default judgment must take into consideration the following three factors:

1. Whether the prevailing party will be prejudiced;

2. Whether the defaulting party has a meritorious defense; and

3. Whether culpable conduct of the defaulting party led to the default.

*INVST Financial Group,* 815 F.2d at 398; *United Coin Meter,* 705 F.2d at 845. *See Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984); *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir.1984) (per curiam); *Feliciano v. Reliant Tooling Co., Ltd.*, 691 F.2d 653, 656 (3d Cir.1982); *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir.1981) (per curiam); *Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 373 (D.C.Cir.1980); *Jackson,* 636 F.2d at 836. *See also* 6 *Moore's Federal Practice,* Para. 55.10[2] at 55–59 (1985 ed.). The *United Coin Meter* court recognized that while the standards were slightly different in Rule 55(c) motions and Rule 60(b) motions, the same

factors were applicable in both situations. *United Coin Meter*, 705 F.2d at 845. Finally, the *INVST* court noted that a court " 'should ... construe[ ] all ambiguous or disputed facts in the light most favorable to the [defaulting party].' " And that any doubts should be resolved in favor of the defaulting party. *INVST*, 815 F.2d at 398 (quoting *Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir.1980)).

A. Prejudice to the Prevailing Party

■ Initially, the Court must inquire into whether the Trustee will be prejudiced if the default judgment is vacated. The Court is sympathetic to Trustee's expressed concern regarding the finality of an order of judgment. This concern, however, is outweighed by the well-settled policy that trials on the merits are favored in federal courts. *Keegel*, 627 F.2d at 373–74. As noted by one appellate court, "[s]ince the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments." *Tozar v. Krause Milling Co.*, 189 F.2d 242, 245 (3d Cir.1951).

■ Additionally, delay in the adjudication process is not a sufficient basis for establishing prejudice. *Davis v. Musler*, 713 F.2d 907, 913 (2d Cir.1983); *see, e.g.*, *United Coin Meter*, 705 F.2d at 845, *Keegel*, 627 F.2d at 374. The concept of prejudice does not merely imply a loss of time or even money in reliance upon the default judgment obtained. Rather, this definition of prejudice means that the "party opposing the motion will no longer be able to present, or will be unduly burdened in attempting to present, the claim(s) advanced in the original pleading as a result of the action, or more commonly the inaction, of the party against whom the default judgment was obtained." *Beaman v. Levy (In the Matter of Levy)*, 75 B.R. 894 (Bankr.S.D.Ohio 1987).

■ Prejudice must be demonstrated such as to convince the court that the setting aside of the default will result in " 'the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion.' " *Davis*, 713 F.2d at 916 (quoting C. Wright, A. Miller and M. Kane, 10 *Federal Practice and Procedure*, § 2899 at 536–37 (1983)). If the party opposing the vacating of the default can only demonstrate prejudice through the loss of time or money, that party may request that such matter be addressed as a component of the order setting aside the default judgment. *Shepard*, 796 F.2d 190, 195. The Court, of course, may raise and address the issue *sua sponte.*

This Court finds that the Trustee has failed to demonstrate any cognizable prejudice which may result from granting the Motion to Vacate. The Trustee's bare allegation that Mittman's untimeliness does not constitute excusable neglect is insufficient to defeat the Motion to Vacate under the standards articulated by the Sixth Circuit Court of Appeals. Such assertions must be supported by some showing of harm. The record is devoid, however, of evidence demonstrating such harm or adversity; in fact, the delay in hearing the Turnover Motion will be slight. And, any costs incurred by the Trustee by virtue of this Order will be borne by the estate. Accordingly, the Court concludes that no prejudice will occur to the Trustee if the default judgment is vacated.

B. Meritorious Defense

■ The second factor the Court is obligated to consider is whether the debtors have presented a meritorious defense. "In determining whether a defaulted defendant has a meritorious defense '[l]ikelihood of success is not the measure' ... [r]ather, if any defense relied upon states a defense good at law, then a meritorious defense has been advanced." *United Coin Meter*, 705 F.2d at 845 (quoting *Keegel*, 627 F.2d at 374). In *Keegel*, the court elaborated on this point by finding that "even a hint of a suggestion" of a defense is sufficient if proven at trial. *Keegel*, 627 F.2d at 374. As one noted authority posited, the key consideration is "to determine whether there is some possibility that the outcome of the suit after a full trial will be contrary

to the result achieved by the default." C. Wright, A. Miller, M. Kane, *supra*, § 2697 at 531.

The debtors oppose the turnover of the so-called "real-estate commissions" and, perhaps, portions of their federal tax refunds. While the Trustee's assertions of entitlement to the debtors' commission income have substance, it cannot be said that the debtors are without meritorious defenses. To be certain, the debtors have not convinced the Court that they will prevail on these defenses at hearing; nonetheless, they have advanced defenses which appear to have merit.

### C. Culpable Conduct of the Debtor

 All three factors announced in *United Coin Meter* must be considered in ruling on a motion to set aside a default judgment. The Court notes, however, when the first two factors mitigate in favor of setting aside the entry, it is an abuse of discretion to deny a Rule 55(c) motion in the absence of a willful failure of the moving party to appear and plead. *Shepard*, 796 F.2d at 194. While cognizant that this matter deals with a default judgment, and not a default under Rule 55, the Court finds this reasoning persuasive in assessing the merits of the Motion to Vacate.

 Under the final factor of the *United Coin Meter* inquiry, the Court must make a determination as to whether culpable conduct of the debtors resulted in a default judgment. To be considered "culpable conduct," the debtors' behavior must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of their conduct on those proceedings. *Shepard*, 796 F.2d at 194; *INVST*, 815 F.2d at 399. This Court does not find the debtors' conduct to be within the Sixth Circuit's meaning of "culpable."

Although the debtors should have provided their new address to the Trustee and Mittman, their failure to do so was not a material factor in the tardiness of their response. The evidence established that the debtors at all times disputed the Trustee's turnover request. Mittman, as their attorney, had numerous communications with the Trustee's counsel concerning the debtors' defenses to that request. The debtors met with Mittman as soon as they were contacted about the Turnover Motion and believed that Mittman was taking all steps necessary to contest the Trustee's request.

If there is fault here, it must be attributed to Mittman. Mittman's initial excuse—that he and the debtors were entitled to receive a specific statement of their right to respond—is without merit. While Bankruptcy Rule 9014 does require, as Mittman argues, that "reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought" by motion, there is no requirement for the type of notice stated by Mittman. It is undeniable, however, that a practice has developed in this Court, and most other bankruptcy courts, whereby a moving party often includes a statement that the party against whom relief is sought has a specific time period—typically 20 or 30 days—to respond and request a hearing; otherwise, a proposed order granting the requested relief will be presented to the Court for signing. Such procedure is common in bankruptcy courts because of the massive volume of motions and objections—many unopposed—which must be noticed to the creditor body in the administration of the case. The practice is administratively convenient for the Court and all parties involved, but is in no way mandated unless specifically required under the Bankruptcy Code or Rules. *See* Bankruptcy Rule 2002. There is, however, one instance where a movant *must* provide a statement similar to the one advocated by Mittman, and that is in the relief-from-stay context. LBR 6.0(c) requires:

> The motion for relief from stay shall be accompanied by a statement that any responsive filing or memorandum shall be filed within twenty (20) days from the date of service of motion unless otherwise provided for by the Court, and that a failure to file a response and accompanying memorandum on a timely basis may be cause for the Court to grant the motion as filed without further notice.

This local rule is intended to harmonize the unique requirements of § 362(e) with the bankruptcy court's motion practice.

The Trustee was well within her right to proceed as she did in this matter. LBR 5.4(b) provides:

Unless otherwise ordered by the Court or required by the Bankruptcy Rules, any responsive filing or memorandum to a motion or application shall specifically designate the pleading to which it responds and shall be filed within twenty (20) days from the date of service as set forth on the certificate of service attached to the motion or application. Failure to file a response and accompanying memorandum on a timely basis may be cause for the Court to grant the motion or application as filed without further notice.

When no response is filed, LBR 5.11 imposes an affirmative duty on the moving party to submit a proposed order granting the relief requested in the motion. The Trustee submitted the Order for Turnover when no response was filed and it was entered as a default order.

The Court recognizes, however, that default judgments are not imposed as a disciplinary mechanism for attorneys; it is the client who suffers by being deprived of his day in court. *Shepard*, 796 F.2d at 195; *INVST Financial Group*, 815 F.2d at 400. As the Sixth Circuit has stated:

Although a party who chooses an attorney takes the risk of suffering from the attorney's incompetence, we do not believe that this record exhibits circumstances in which a client should suffer the ultimate sanction of losing his case without any consideration of the merits because of his attorney's neglect and inattention.

*Shepard*, 796 F.2d at 194. In the instant case, there is absolutely no showing that failure to file a timely response was a deliberate attempt by the debtors to thwart or usurp these proceedings, nor is there any evidence of a reckless disregard by the debtors in connection with this proceeding. The fault was in Mittman's confusion over LBR 5.4(b) and Bankruptcy Rule 9014.

This confusion is not patently meritless, since it may be unclear to parties, at times, when the additional language must be used. Bankruptcy Rule 2002 sets forth those instances when such notices *must* be used; however, it is not inconceivable that legitimate misunderstandings arise from time to time about the rule's application. Rule 2002 is clear, and such misunderstandings should rarely arise; however, the Court is aware that they occasionally do.

The Court notes additionally that there was only a four-day lapse between the time the default judgment was entered by the Clerk's office and the filing of the Motion to Vacate. Clearly, this short time-period does not reflect egregious behavior which rises to the level of willful or culpable conduct. It evidences, instead, the debtors' continuing objection to the turnover request.

The Trustee has relied heavily on the case of *Miller v. Owsianowski (In re Salem Mortgage Co.)*, 791 F.2d 456 (6th Cir. 1986), for the proposition that Mittman's claims of mistake and excusable neglect must be based on Rule 60(b)(1), not Rule 60(b)(6)'s residual clause. In reversing the bankruptcy court's refusal to set aside a default judgment, the Sixth Circuit noted in that case that Rule 60(b) is " 'not intended to relieve counsel of the consequences of decisions deliberately made, although subsequent events reveal that such decisions were unwise.' " *In re Salem Mortgage Co.*, 791 F.2d at 459 (quoting *Federal's, Inc. v. Edmonton Investment Co.* [citation omitted]). While this is undoubtedly true, those facts did not exist in *Salem Mortgage* and do not exist here.

The Court finds that, under the facts of this case, including the inadvertent scheduling of a hearing for January 7, 1991, Mittman's mistake and excusable neglect, a legitimate basis for granting the debtors' request for relief from the Order for Turnover. Accordingly, and for the reasons stated herein, the Motion to Vacate is GRANTED. A notice of a rescheduled hearing on the Turnover Motion shall be issued forthwith. In the interim, the Trustee and debtors should make every effort to

resolve a dispute which, it seems, should not require further judicial intervention.

IT IS SO ORDERED.