In re Arnetta BRENGETTCY, Debtor.

Arnetta BRENGETTCY, Plaintiff,

v.

NATIONAL MORTGAGE COMPANY,
Ray–Lee Investment Company, and
Mr. T.R. Smith, Defendants.

Bankruptcy No. 94–24784–D.
Adv. No. 94–1002.

United States Bankruptcy Court,
W.D. Tennessee,
Western Division.

Jan. 10, 1995.

W. Otis Higgs, Jr., Memphis, TN, for debtor/plaintiff.

Stephen Bearman, Alex Saharovich, Memphis, TN, for defendants.

## MEMORANDUM OPINION AND ORDER RE DEBTOR'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

BERNICE BOUIE DONALD,
Bankruptcy Judge.

This case came on to be heard on Debtor's motion for a temporary restraining order and preliminary injunction. The injunctive relief sought relates to Debtor's motion to set aside a foreclosure sale made in violation of the automatic stay. The Court has jurisdiction pursuant to 28 U.S.C. § 157(b)(2) and 28 U.S.C. § 1334.

The Court granted a temporary restraining order against National Mortgage Co. on October 21, 1994 and set the matter for an initial ruling on November 4, 1994. On November 4, 1994, the Court extended the TRO and set a further hearing for December 6, 1994 to consider whether a preliminary injunction should be issued. The hearing was continued to December 13, 1994 on which date the Court heard testimony and arguments of counsel, and orally entered relief for the plaintiff. The Court, on the record, reserved the right to enter written findings and conclusions. Pursuant to the Court's December 13, 1994 oral ruling, the following shall constitute the Court's findings of fact and conclusions of law. F.R.B.P. 7052.

1. *In re Arnetta Brengettcy,* Case No. 92–30773.

2. A chapter 13 plan is often referred to as a "wage earner" because these plans typically contemplate that a debtor will pay creditors from his or her wages. It should be noted that eligibility

## BACKGROUND FACTS

Debtor previously filed for relief under chapter 13 of the Bankruptcy Code in 1992.[1] In the 1992 case, creditor National Mortgage Company moved for relief from the automatic stay so that it could proceed to foreclose under its deed of trust with Debtor. National Mortgage stated at that time that the mortgage was in arrears, with arrearages totalling $6,077.26. Debtor's confirmed chapter 13 plan provided that National Mortgage would receive $391.00 per month as a regular mortgage payment, and $120.00 per month to cure the arrearages.

The Court conditionally denied National Mortgage's motion for relief from the automatic stay on December 15, 1992. The order contained a "drop dead" clause which provided that "in the event this wage earner[2] is dismissed, then debtor is prohibited from refiling as to National Mortgage Company unless she is able to show a change in circumstances." The 1992 chapter 13 case was dismissed on January 25, 1994.

On May 17, 1994, at 8:59 AM, the debtor filed the instant chapter 13 case. On that same day, at 12:00 Noon, National Mortgage Company held a foreclosure sale. National Mortgage Company, as agent for GNMA, was the highest bidder.

The Debtor filed a motion on May 19, 1994 through her then attorney of record, Gerald Green, to set aside the foreclosure sale as violative of the automatic stay which became effective upon Debtor's filing of the instant chapter 13 case. The hearing on the motion was originally scheduled for June 14, 1994, was continued to July 26, 1994 and was continued again to August 23, 1994. On August 23, 1994, National Mortgage appeared in court for the hearing but neither Debtor nor her attorney appeared. The Court entered an order on August 25, 1994 which:

1. Denied Debtor's motion for failure to prosecute.

for chapter 13 relief is not restricted to those debtors who earn wages but rather to debtors who have regular income from any source. *See* 11 U.S.C. § 109(e).

2. Validated the May 27, 1994 foreclosure sale.

3. Prohibited Debtor from taking any action to prevent National Mortgage Company from obtaining the premises.

By virtue of Local Rule 6, this order was tantamount to a default judgment.

On or about September 16, 1994, National Mortgage conveyed the property to Ra–Lee Investments. On October 6, 1994, Debtor, through a new attorney of record, Otis Higgs, filed a second motion to set aside the foreclosure sale made in violation of the automatic stay. In the motion, Debtor asserted that she had received no notice of the August 23 hearing, and that her then attorney Gerald Green was tied up with other matters in Mississippi on that date.

Debtor's confirmed plan in the instant case provides for ongoing monthly mortgage payments to National Mortgage of $391, and monthly payments of $25 to cure the arrearages. At the hearing, Debtor stated that she made such payments to the trustee through August 1994. Subsequently, she has been depositing the monthly payments into an escrow account.

Debtor testified that she had not been notified either by the Court or her attorney, Gerald Green, of the August 23, 1994 hearing and only found out about it after the fact when a friend told her she had seen Debtor's name on the court calendar. Counsel for National Mortgage stated that Mr. Green had not objected to the entry of the order. In fact, Mr. Green had requested additional time for Ms. Brengettcy to remain on the premises. Debtor testified that she found out about the sale of the property only after a representative of Ra–Lee Investments, the purchaser, came to her house to notify her that she had to vacate the premises. She stated that she had not asked Mr. Green to request extra time for her to stay on the property.

## DISCUSSION

This case raises fundamental issues about the scope of the automatic stay and the ability of a bankruptcy court to reconsider its previously issued orders. Counsel for Na-

tional Mortgage argued that the Court lacks jurisdiction to hear this matter. This argument was based upon the "drop dead" order entered in the previous chapter 13 case, and the August 25, 1994 order entered in this case which validated the foreclosure sale. Both parties submitted memoranda of law on the issue of jurisdiction. The Court will consider this argument before considering whether further injunctive relief is warranted.

*Did the "Drop Dead" Order in Debtor's Prior Case Prospectively Relieve National Mortgage Company from the Automatic Stay in the Current Case?*

■ Arguably, the "drop dead" order entered in the 1992 case prospectively relieved National Mortgage from the restraints of the automatic stay in any future case. If the order did provide such prospective relief, the foreclosure sale would have been valid and Ms. Brengettcy would have no remedies available in this Court. As detailed below, however, the language in the "drop dead" order prohibiting Debtor "from refiling as to National Mortgage Company unless she is able to show a change in circumstances" contemplated that Ms. Brengettcy would be afforded an opportunity to be heard on this matter if she filed a subsequent bankruptcy case.

The purpose of the Bankruptcy Code is to provide the unfortunate debtor with a fresh start. The automatic stay is one of the primary means of achieving this goal. It provides a breathing spell from the actions of creditors so that a "debtor who seeks a fresh start is afforded a rehabilitation opportunity free from the financial pressures and problems which caused the debtor to seek relief under the Code." 2 *Norton Bankruptcy Law and Practice 2d* § 36:4.

§ 362(a) of the Bankruptcy Code states, in relevant part:

Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of—

(1) the commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . .

(3) any act to obtain possession of property of the estate ...

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case ...

11 U.S.C. § 362(a).

It is clear from the statutory language that the stay takes effect as soon as a bankruptcy petition is filed. As one noted authority states, "[t]he automatic stay provided by Code § 362 is self-executing and is effective upon the filing of a voluntary or involuntary petition." 2 *Norton Bankruptcy Law and Practice 2d* § 36:4. Thus, when Ms. Brengettcy filed her chapter 13 petition at 8:59 A.M. on May 17, 1994, the automatic stay took effect. Whether the stay applied to National Mortgage depends upon whether the "drop dead" order in the previous case had an absolute prospective effect.

Because the automatic stay is so fundamental to the relief provided under the Bankruptcy Code, bankruptcy courts are extremely reluctant to refrain from enforcing the stay. As one court has noted, "Congress placed the court at the vortex of bankruptcy proceedings and the provisions of the automatic stay are designed as the initial channels that regulate the flow of economic consequences, which, if left unchecked ... would drown a debtor's opportunity for a fresh start." *In re Figgers*, 121 B.R. 772, 777 (Bankr.S.D.Ohio 1990).

The same considerations apply in the context of prospective orders. In *In re Norris*, the District Court for the Eastern District of Pennsylvania held that "on its face, the statute makes the stay *automatic* in all bankruptcy proceedings ... [A] bankruptcy judge in a pending proceeding simply does not have the power to determine that the automatic stay shall not be available in subsequent bankruptcy proceedings." *In re Norris*, 39 B.R. 85, 87 (D.C.E.D.Pa.1984) *See also In re Taras*, 136 B.R. 941, 947 (Bankr.E.D.Pa. 1992); *In re Siciliano*, 167 B.R. 999, 1016 (Bankr.E.D.Pa.1994).

This does not mean that the Court gives no effect to the order entered in the previous chapter 13 case. Nor does it mean that debtors can continually file and refile under chapter 13 to prevent a foreclosure sale indefinitely. Rather, the Court holds that the debtor must be given an opportunity to be heard in the subsequent chapter 13 case before a creditor can proceed to foreclosure.

In the instant case, the very language of the "drop dead" order contemplated that some hearing would occur. The order stated that "in the event this wage earner is dismissed, then debtor is prohibited from refiling as to National Mortgage Company *unless she is able to show a change in circumstances*." The only way for Ms. Brengettcy to have demonstrated such a change in circumstances was through a hearing in this Court before National Mortgage was relieved from the automatic stay. To hold otherwise would vest National Mortgage with unilateral authority to decide whether the debtor incurred changed circumstances.

This conclusion is strengthened by the holdings of other courts. In *Matter of McKanders*, the court took a hard line against debtors potentially abusing the system by filing successive chapter 13 cases to avoid foreclosure. Yet, the court also allowed some opportunity for the debtor to demonstrate a change in circumstances. The court stated:

Where a stay has been terminated in a prior case to permit foreclosure, the new stay should not be allowed in a subsequent Chapter 13 case absent demonstration of change of conditions of the debtor's financial resources and ability to fund a plan ... In any chapter 13 case where the automatic stay affects the foreclosure or recovery rights of a creditor pursuant to an order of the Bankruptcy Court in a prior chapter 13 case, the secured creditor will be granted a very prompt *hearing* upon its request (and on very short notice to the debtor), to determine whether the new stay should be permitted to affect the prior order which terminated the stay in the prior case. *Matter of McKanders*, 42 B.R. 108, 110 (Bankr.N.D.Ga.1984). (emphasis added)

Based on the language of the "drop dead" order, the fundamental role of the automatic

stay, and the holdings of other courts, the Court concludes that National Mortgage was not prospectively relieved from the automatic stay and that Ms. Brengettcy was entitled to some hearing before the foreclosure could proceed.

*Does the Court Have Jurisdiction to Consider Debtor's Present Motion?*

The issue of whether Ms. Brengettcy is entitled to have a hearing based upon her motion to set aside the foreclosure sale is complicated by the August 25 order which was entered after she and her attorney failed to appear for a scheduled hearing. That order stated that the foreclosure sale was validated. National Mortgage contends that because of that order, this Court no longer has jurisdiction to consider this matter.

National Mortgage bases its argument on the Sixth Circuit case of *In re Glenn,* 760 F.2d 1428 (6th Cir.1985). *Glenn* involved three cases that were consolidated on appeal. In one case, the debtors filed for relief under chapter 13 of the Bankruptcy Code after their mortgagee had obtained a judgment of foreclosure but before a foreclosure sale was held. In the other two cases, the debtors filed for relief under chapter 13 after a judgment of foreclosure had been issued and after a foreclosure sale had occurred. The debtors in each case sought to reinstate their mortgage and to cure arrearages under their chapter 13 plan. *Id.* at 1430–31.

■ Under 11 U.S.C. § 1322(b)(5), a chapter 13 debtor may provide for the curing of a mortgage default in his or her plan. In *Glenn,* the Sixth Circuit held that a debtor can cure a mortgage default and reinstate the mortgage after a judgment of foreclosure is issued but before a foreclosure sale takes place.[3] *Id.* at 1435–36. In other words, a debtor who files for relief under chapter 13 after a foreclosure sale has occurred cannot cure a mortgage default under § 1322(b)(5). Conversely, a debtor who files under chapter 13 at any time before a foreclosure sale has occurred can reinstate the mortgage and provide for the curing of a default.

In the instant case, Debtor filed for relief under chapter 13 before the foreclosure sale occurred, albeit only three hours before. By contrast, under *Glenn,* debtors lose the right to cure a mortgage if they file for chapter 13 relief *after* a valid foreclosure sale has occurred. Thus, *Glenn* appears to be inapplicable to the instant case.

Counsel for National Mortgage argues, however, that when the Court entered the August 25 order validating the foreclosure sale, the rule of *In re Glenn* took effect and Ms. Brengettcy lost all rights to address the property and the mortgage through the bankruptcy court. Ms. Brengettcy's counsel argues that this Court does maintain jurisdiction by virtue of its power to vacate previous orders under Rule 60(b) of the Federal Rules of Civil Procedure, as well as the Court's general equitable powers under 11 U.S.C. § 105(a).

As noted above, under *Glenn,* a foreclosure sale cuts off a debtor's right to reinstate a mortgage through a *subsequently filed* chapter 13 proceeding. Here, the foreclosure sale occurred after Ms. Brengettcy filed her current chapter 13 petition. The August 25 order stated that the foreclosure sale was validated, but did not back date the foreclosure sale to a time before the present case was filed.

■ The Court does give serious attention to the fact that the August 25 order stated that the foreclosure was validated. However, under F.R.Civ.P. 60(b), made applicable to bankruptcy proceedings through F.R.B.P. 9024, the Court maintains the power to relieve a party from any final judgment or order. Rule 60(b) states, in relevant part:

On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; ... or (6)

---

**3.** The court in *Glenn* also held that the imposition of the automatic stay at the commencement of a chapter 13 case does not toll the statutory

redemption period provided under state law. *Glenn,* 760 F.2d at 1436–40.

any other reason justifying relief from the operation of the judgment.

F.R.Civ.P. 60(b).

F.R.B.P. 9024 states that "Rule 60 F.R.Civ.P. applies in cases under the Code." F.R.B.P. 9024 It then states three narrow exceptions dealing with certain time limits.[4] It does not list orders validating foreclosure sales among the exceptions to the operation of Rule 60 in bankruptcy proceedings. Further, the Advisory Committee Note to F.R.B.P. 9024 states that "[f]or the purpose of this rule *all* orders of the bankruptcy court are subject to Rule 60(b) F.R.Civ.P." F.R.B.P. 9024 advisory committee's note (emphasis added).

To accept National Mortgage's argument that the Court lacks jurisdiction in this matter, the Court would have to read the Sixth Circuit's holding in *In re Glenn* as creating a judicial exception to Rule 60(b) and F.R.B.P. 9024 where the order from which relief is sought validates a foreclosure sale. The Court does not find that *Glenn*, either explicitly or implicitly, creates such an exception.

Because the foreclosure sale occurred before Ms. Brengettcy filed her current chapter 13 case, and because the Court has the power to relieve a party from all final orders under Rule 60(b), the Court holds that it has jurisdiction to hear this matter.

*Should the Court Vacate the August 25 Order?*

The Court cannot proceed to determine whether further injunctive relief is warranted, or ultimately to a trial on the merits, before considering whether there are grounds for vacating the August 25 order. Although in the pleadings Debtor did not explicitly move for relief under Rule 60(b), the memorandum of law submitted by her counsel addressed Rule 60(b) extensively. Subsequently, Debtor's counsel made an ore tenus motion for relief under Rule 60(b). The Court will treat this as a request for relief from the August 25 order. The Court

first notes that a motion under Rule 60(b) must "be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order or proceeding was entered or taken." F.R.Civ.P. 60(b). In the instant case, the present motion was filed on October 6, 1994, well within the time limit contemplated under Rule 60(b).

The Sixth Circuit has established three factors to consider in determining whether a default judgment should be vacated. These factors are:

1) Whether the prevailing party will be prejudiced;

2) Whether the defaulting party has a meritorious claim or defense;

3) Whether culpable conduct of the defaulting party led to the default.

*In re Antonick*, 124 B.R. 750, 753 (Bankr. S.D.Ohio 1991); *INVST Financial Group v. Chem–Nuclear Systems*, 815 F.2d 391, 398 (6th Cir.1987); *United Coin Meter v. Seaboard Coastline R.R.*, 705 F.2d 839, 845 (6th Cir.1983) The Court will address each of these factors.

*Prejudice*

National Mortgage asserted that it would be prejudiced if the Court vacates the August 25 order. Fred Bost, the department supervisor of the Bankruptcy Division of National Mortgage Company, testified that Ms. Brengettcy's loan was part of a GNMA mortgage pool and National Mortgage was the servicing agent. Mr. Bost stated that because the loan was removed from the pool at the time of the foreclosure sale, it cannot be placed back into the pool. Therefore, the federal guaranty has been lost. He also stated that National Mortgage would not be able to resell the loan to another investor because of the loan's poor history.

The Court recognizes that if the order is vacated and the foreclosure is set aside after a trial on the merits, National Mortgage will be subject to the difficulties cited by Mr.

---

4. The exceptions are: (1) a motion to reopen a case under the Code or for reconsideration of an order allowing or disallowing a claim against the estate entered without a contest is not subject to the one year limitation prescribed in Rule 60(b), (2) a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code, and (3) a complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330. F.R.B.P. 9024.

Bost. However, these same problems were present on August 23, 1994 when Debtor's first motion was set for hearing. If a trial had been held on that date and if Debtor had prevailed at such a trial, National Mortgage would have faced the same difficulties. Vacating the order and holding a trial on the merits at this time would not increase the difficulties. Any potential harm to National Mortgage as a result of the factors cited by Mr. Bost stems from the fact that the foreclosure sale was held when the automatic stay was in place, not from the timing of a hearing on the merits.

 National Mortgage also asserts that it has been prejudiced by the increased costs of litigating Ms. Brengettcy's current motion. The Court notes that mere delay in the adjudication of a claim is not sufficient prejudice to require denial of a motion to set aside a default judgment. *United Coin Meter*, 705 F.2d at 845 (citations omitted). The loss of time or money in reliance on a default judgment does not constitute prejudice. *In re Antonick*, 124 B.R. at 754. Rather, the party opposing the motion must show that it "will no longer be able to present, or will be unduly burdened in attempting to present, the claim(s) advanced in the original pleading." *Id.* (quoting *Matter of Levy*, 75 B.R. 894 (Bankr.S.D.Ohio 1987)). National Mortgage has not made such a showing.

Finally, National Mortgage argues that if the Court vacates the order validating the foreclosure sale, it will suffer long term consequences in that future investors will be reluctant to purchase foreclosed properties. While the Court is mindful of the need for finality in its orders, this concern must be balanced against other factors. As the bankruptcy court for the Southern District of Ohio has stated, "The Court is sympathetic to ... [the] concern regarding the finality of an order of judgment. This concern, however, is outweighed by the well-settled policy that trials on the merits [as opposed to default judgments] are favored in federal courts." *In re Antonick*, 124 B.R. at 754.

The preference for a trial on the merits is particularly strong in the instant case because the default order will result in a loss of property. The prejudice to National Mortgage does not outweigh the consequences of deeming the foreclosure sale to be valid before Ms. Brengettcy has an opportunity to be heard.

*Meritorious Claim*

The Court must next consider whether Debtor has a meritorious claim. She does not have to show a likelihood of success on the merits. In the context of a Rule 60(b) motion, she must show only that a meritorious claim has been advanced. *INVST Financial Group*, 815 F.2d at 398–99.

The Court has already determined that the automatic stay was in place when the foreclosure sale occurred. Based on the evidence, there is a core question as to whether Debtor had notice of the originally scheduled hearing. There was also evidence presented that Ms. Brengettcy has been depositing the mortgage payments into an escrow account. This indicates that she may be able to show a change in circumstances if there is a trial on the merits. Thus, the Court concludes that Debtor has a meritorious claim.

*Culpable Conduct*

The final factor to be addressed is whether Debtor's conduct in failing to prosecute the original motion was culpable. The Sixth Circuit has defined culpable behavior in this context as either an intent to thwart judicial proceedings or a reckless disregard for the effect of the conduct on those proceedings. *INVST Financial Group*, 815 F.2d at 399; *In re Antonick*, 124 B.R. at 755. In the instant case, there is no evidence that Debtor engaged in this kind of culpable behavior.

There is, however, a question as to whether Debtor is responsible for the actions of her attorney. In order to vacate the August 25 order under Rule 60(b)(1), the Court must find that the failure to prosecute the original motion was the result of excusable neglect.[5]

---

5. The Court could also consider whether the order should be vacated for "any other reason justifying relief" under Rule 60(b)(6). This provision is generally invoked when there are extreme circumstances. *See Pioneer Inv. Services v. Brunswick Associates,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993)

The Sixth Circuit has consistently held that a default judgment should not be used as a method of disciplining an errant attorney. *See, e.g., Carter v. City of Memphis,* 636 F.2d 159 (6th Cir.1980); *Patterson v. Township of Grand Blanc,* 760 F.2d 686 (6th Cir.1985). The Supreme Court recently addressed this issue in *Pioneer Inv. Services v. Brunswick Associates* Pioneer dealt with excusable neglect under F.R.B.P. 9006(b)(1), but the Court noted that the same considerations apply to Rule 60(b)(1). *Pioneer Inv. Services v. Brunswick Associates,* —— U.S. ——, ——, 113 S.Ct. 1489, 1497, 123 L.Ed.2d 74 (1993).

The Court concluded that the determination of whether a particular instance of neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Id.* at ——, 113 S.Ct. at 1498. The Court went on to state that "clients must be held accountable for the acts and omissions of their attorneys" unless the attorney's neglect is itself excusable. *Id.* at ——, 113 S.Ct. at 1499. In so holding, the Court reaffirmed its earlier decision in *Link v. Wabash R. Co.,* 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962).

In a case decided after *Pioneer,* however, the Sixth Circuit reiterated its concern that an individual should not be denied a trial on the merits because of the acts of his or her attorney. In an unpublished opinion, the Sixth Circuit stated "despite the Supreme Court's unequivocal language, this court, like many others, has been extremely reluctant to uphold the dismissal of a case or the entering of a default judgment merely to discipline an errant attorney because such a sanction deprives the client of his day in court ... Dismissal is usually inappropriate where the neglect is solely the fault of the attorney." *Rex Rush v. Beverly McLendon and Darrell Tade,* 21 F.3d 428 (6th Cir.1994) (citations omitted).

Dismissal of the debtor's motion in the instant case without a trial on the merits would be extremely inappropriate. According to Debtor's uncontroverted testimony, her attorney not only did not appear in court, but never even communicated the hearing date to her. He did not inform her about the default order. He requested additional time for her to remain on the premises but did not confer with her about this request nor inform her that she would have to leave. Although Ms. Brengettcy arguably could have been more persistent in initiating contacts with her attorney, it is difficult to find anything culpable about her conduct in this matter.

Further, it would be particularly harsh to penalize Ms. Brengettcy because the default order will result in the loss of property. Despite the language in *Pioneer* regarding the effect of an attorney's conduct, the Court also stated that the determination of what constitutes excusable neglect "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer,* —— U.S. at ——, 113 S.Ct. at 1498. It is difficult to conclude that, under the circumstances surrounding the entry of the August 25 order, equity should allow the foreclosure sale to be validated without an opportunity for Ms. Brengettcy to be heard.

The Court has examined the relevant factors for determining whether to vacate an order entered by default. The court concludes that the August 25 order should be vacated.

*Should the Court Issue a Preliminary Injunction?*

■ The Court must find that four factors exist in order to continue the injunctive relief in this case. These factors are:

1) Likelihood of success on the merits;

2) Irreparable harm to the moving party and inadequacy of a legal remedy;

3) Harm to the moving party outweighs the harm to the nonmoving party;

4) The injunction would serve the public interest.

*See In re DeLorean Motor Co.,* 755 F.2d 1223, 1228 (6th Cir.1985) The Court has essentially addressed the last three factors in the context of the Rule 60(b) motion. Ms. Brengettcy would suffer irreparable harm if she is forced to leave her property, and monetary damages would be inadequate. While the court acknowledges the harms faced by National Mortgage as discussed *su-*

*pra*, these harms are outweighed by the harm that Ms. Brengettcy would suffer if she is forced to vacate the property and is divested of her interest in the property before having an opportunity to be heard. Finally, public policy favors both the enforcement of the automatic stay and an opportunity for a trial on the merits.

The Court also finds, based on the evidence presented to this point, that there is a likelihood that Debtor will be successful on the merits in that her bankruptcy case was filed before the foreclosure sale was held. The Sixth Circuit has recently held that actions taken in violation of the automatic stay are voidable. *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir.1993).

Further, the hearing on the motion to set aside the foreclosure sale will essentially be Debtor's opportunity to show that there has been a change in circumstances since her previous chapter 13 case was dismissed. Ms. Brengettcy testified that she has been paying the monthly mortgage payments into escrow. In the absence of other evidence on this point, the payments indicate that there is a likelihood that Ms. Brengettcy will be able to demonstrate a change in circumstances.

The Court will issue a preliminary injunction and proceed to a trial on the merits. The Court will require Debtor to post a bond of $1,000.

### CONCLUSION

Based on the above, the Court holds that it has jurisdiction to hear this matter and orders the following:

1) The order of August 25, 1994 is vacated;

2) A preliminary injunction is issued against National Mortgage and Ra–Lee Investments, and such parties shall take no steps to evict the debtor from the property;

3) Debtor shall post bond in the amount of $1,000.

**IT IS SO ORDERED.**