**In re Abraham FRIEND and Edna Friend, Debtors.**

**Abraham FRIEND and Edna Friend, Plaintiffs,**

v.

**CHEMICAL RESIDENTIAL MORTGAGE CORPORATION, Defendant.**

Bankruptcy No. 95–28362–B.
Adv. No. 95–1133.

United States Bankruptcy Court,
W.D. Tennessee.

Jan. 24, 1996.

Eugene C. Douglass, Jr., Bartlett, TN, for Debtors.

Bruce L. Feldbaum, Memphis, TN, for Chemical Residential Mortgage Corp.

George W. Emerson, Jr., Chapter 13 Trustee, Memphis, TN.

## MEMORANDUM OPINION ON COMPLAINT FOR INJUNCTIVE RELIEF AND FOR ENFORCEMENT OF AUTOMATIC STAY

WILLIAM H. BROWN, Bankruptcy Judge.

The Chapter 13 debtors, Abraham and Edna Friend, filed their present chapter 13 case on August 11, 1995. This was their fourth filing, and the third chapter 13 case, number 94–21606, contained an Order, known by bankruptcy practitioners as a "drop dead" Order, entered on March 29, 1994. The "drop dead" terminology is unfortunate, as it implies harsher results to debtors than intended by the creditors or by the courts; therefore, this Court will refer to such an order as one of "last opportunity." That Order contained language providing that in the event of the dismissal of that case or in the event of relief from the automatic stay, the dismissal of the case or the lifting of the automatic stay would be with prejudice to the debtors' refiling for 180 days as to Chemical Residential Mortgage Corporation ("Chemical"). Chemical is the holder of a first mortgage securing the debtors' residence. Thus, the issue presented in this adversary proceeding is the effect of that Order.

There is no dispute of fact in the present case and the case was presented to the Court without sworn testimony, but upon an offer of proof from the debtors and the statements of counsel for both the debtors and Chemical. The undisputed facts reveal that the debtors have owned their residence for approximately eighteen years and that it currently has a value range of $40,000 to $50,000. During the debtors' prior chapter 13 case, number 94–21606, both lost their jobs. Subsequent to that case being dismissed on June 30, 1995, the debtors have enjoyed favorable changes of circumstances in that Mr. Friend has obtained a new job and Mrs. Friend has recovered her former employment. The present case is one in which the debtors have agreed to a payroll deduction in order to fund their chapter 13 plan. The debtors' plan has been confirmed as of November 14, 1995, but without prejudice to the assertions of Chemical that the automatic stay in this case did not apply. Upon the filing of the present chapter 13 case, the debtors' counsel notified Chemical of the new bankruptcy filing and Chemical advised the debtors' counsel that it intended to proceed with foreclosure on the strength of the "last opportunity" Order from the prior case.

In order to assure that the foreclosure would not take place, the debtors' counsel filed this complaint seeking to enjoin the pending foreclosure and to enforce the automatic stay provisions in this case. The complaint also sought damages, but the debtors have not pursued their damage claim. A motion for a temporary restraining order was filed and after an October 17, 1995 hearing, an Order was entered authorizing Chemical to conduct its foreclosure sale, which was scheduled on October 18, 1995; however, Chemical was restrained from recording a substitute trustee's deed or taking further action to consummate the sale, pending further hearings and further orders of this Court. The foreclosure sale was conducted but Chemical has complied with the restraining order.

█ Chemical does not dispute that these debtors have had favorable changes of circumstances subsequent to the dismissal of their prior chapter 13 case, and in the absence of a dispute of fact, this Court finds that the debtors did have sufficient changes of circumstances that lead to a finding that this chapter 13 case was filed in good faith and that the debtors' plan was proposed in good faith. As stated, the Court has already confirmed the debtors' plan in this case without prejudice to the issues raised in this adversary proceeding. As expressed by the attorney for Chemical, the two primary issues presented in this adversary proceeding are: (1) Who has the burden of going forward when a new case such as this is filed after the issuance of a "last opportunity" order in a prior bankruptcy case? That is, must the debtor file a complaint seeking injunctive relief to stop a pending foreclosure or must the creditor initiate a motion for relief from the automatic stay? (2) Does the automatic stay apply in the present case to Chemical, in view of the provisions of the

"last opportunity" Order entered in the prior chapter 13 case?

## INITIAL BURDEN

■ As to the first issue, counsel for Chemical concedes that the debtors in the present case followed an appropriate procedure of filing a complaint seeking injunctive relief in order to prevent Chemical's scheduled foreclosure sale. Therefore, the Court is not inclined to render an advisory opinion as to what procedure must be followed in all future cases before this Court. The Court will observe that there are least two ways to arrive at the same result. Debtors of course, as these did, upon the filing of their chapter 13 case, may file an adversary proceeding naming the mortgagee as a defendant and seeking injunctive relief to prevent that mortgagee from proceeding with a scheduled foreclosure sale. Typically, such complaints would be accompanied by a motion for a temporary restraining order and the Court would conduct an immediate hearing to determine whether the mortgagee should be restrained or whether the foreclosure may proceed under certain conditions. FED. R.BANKR.P. 7065. On the other hand, a debtor might rely upon the efficacy of the automatic stay and put the burden upon the creditor to file a motion for relief from the automatic stay pursuant to § 362(b). Of course, the creditor may seek a prompt hearing on such a motion. FED.R.BANKR.P. 4001(a). As will be seen from the discussion in the next section of this opinion, the mortgagee runs a risk in assuming that the automatic stay does not apply upon the filing of a new case; thus, it may be prudent for the mortgagee, just as would apply to any creditor, to seek relief or other modification of the automatic stay prior to proceeding with foreclosure or other collection efforts.

## AUTOMATIC STAY

■ As to the second issue, this Court concludes that the automatic stay did attach upon the filing of the present case. In an earlier opinion by this Court, I agreed with the Honorable Bernice Bouie Donald that "the debtor is entitled to a judicial determination of whether the debtor had a sufficient change in circumstances to justify a refiling notwithstanding such [a 'last opportunity'] order's entry in a prior case." *Norwest Financial Tennessee, Inc. v. Coggins (In re Coggins)*, 185 B.R. 762, 765 (Bankr. W.D.Tenn.1995) (citing *Brengettcy v. National Mortgage Co. (In re Brengettcy)*, 177 B.R. 271 (Bankr.W.D.Tenn.1995)). As this Court observed in *Coggins*, to deny the debtor an opportunity for such a judicial determination and to assume that the automatic stay does not apply would negate the holding of the Court of Appeals for this Circuit in *Society National Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir.1992), where that Court reaffirmed that a good faith analysis requires an examination of the totality of the circumstances of each particular case.

■ In her *Brengettcy* opinion, Judge Donald discussed the automatic stay at more depth as it relates to "last opportunity" orders entered in prior bankruptcy cases. As stated in the introduction to this opinion, such orders are entered commonly, often by consent, in chapter 13 cases, and such orders typically provide that this is the last opportunity for a debtor to restructure a particular debt or to cure defaults in chapter 13. Such orders typically provide that if the debtor does not succeed in the chapter 13 case before the court, either the automatic stay will be lifted or the case will be dismissed and that such action will be with prejudice as to the mortgagee or other secured creditor, giving such a creditor potential prospective relief to proceed with foreclosure, repossession, or other remedies. Many times such orders contain language that a refiling of a bankruptcy is prohibited unless the debtor is able to demonstrate a change in circumstances. *See In re Brengettcy*, 177 B.R. at 273. However, many of these orders do not contain such change of circumstances language. Notwithstanding the presence or absence of such language, the parties and the court can not ignore the language of the Bankruptcy Code. Section 362(a) clearly provides that the filing of a bankruptcy petition "operates as a stay, applicable to all entities." 11 U.S.C. § 362(a); *see In re Brengettcy*, 177 B.R. at 273. As Judge Donald noted, "it is clear from the statutory

language that the stay takes effect as soon as a bankruptcy is filed." *Id.* at 274 (citing NORTON BANKRUPTCY LAW AND PRACTICE 2d § 36:4). Thus, the language "automatic stay" in the statute is not merely descriptive but definitive.

■ As at least one judge has observed, "[a] bankruptcy judge in a pending [case] simply does not have the power to determine that the automatic stay shall not be available in subsequent bankruptcy [cases]." *In re Norris,* 39 B.R. 85, 87 (D.E.D.Pa.1984). Counsel for Chemical suggested that the "last opportunity" Order at issue here was akin to a prepetition waiver of the automatic stay and cited authority that such waivers are permissible. *See, e.g., In re Cheeks,* 167 B.R. 817 (Bankr.D.S.C.1994); *In re Jenkins Court Assoc. L.P.,* 181 B.R. 33 (Bankr. E.D.Pa.1995). *Jenkins* was a chapter 11 case where that Court discussed the possible distinction between "a waiver of the protection of the automatic stay from a blanket prohibition against a bankruptcy filing." *Id.* at 36. However, the *Jenkins* Court did not enforce the debtor's prepetition waiver but did permit further hearings in which the debtor's representations contained in the waiver would be considered for their evidentiary value. The *Cheeks* Court gave evidentiary weight to the debtor's prepetition forbearance agreement wherein the debtor agreed not to oppose or object to the mortgagee's motion for relief from the automatic stay, but that Court also observed that the stay may be lifted or modified only after the filing of an appropriate motion. *In re Cheeks,* 167 B.R. at 819. That is precisely the effect that this Court would give to "last opportunity" orders; that is, give them appropriate evidentiary weight as the Court balances all of the facts and circumstances. To rule otherwise would be violative of at least the spirit if not the actual holding of *Barrett.* See LUNDIN, CHAPTER 13 BANKRUPTCY 2d § 8:36 at 8–63 (1994) (discussing the Sixth Circuit's dicta that "a creditor's request for an injunction prohibiting the debtor from refiling a bankruptcy case exceeds the 'powers properly invoked by a bankruptcy court.' ") *In re Barrett,* 964 F.2d at 591.

Also, the Court is concerned about the effect of such "last opportunity" orders on other creditors. Such orders may not be noticed always to other creditors in the case; thus, if the Court established a per se rule that those orders would waive the debtor's automatic stay protections in future cases, that waiver could affect adversely the interests of other creditors. *See, e.g., In re Sky Group Int'l, Inc.,* 108 B.R. 86, 88 (Bankr. W.D.Pa.1989) ("The legislative history makes it clear that the automatic stay has a dual purpose of protecting *the debtor and all creditors* alike.") For example, should the secured creditor obtaining the benefit of a "last opportunity" order be oversecured, junior secured creditors or unsecured creditors may be denied a recovery if that order enjoyed the self executing effect of waiving the automatic stay in future cases. *Id.* at 89.

There is also an inherent problem with giving preclusive effect to orders, such as the one at issue here, that contain language barring the debtor from refiling for 180 days. That restriction comes from 11 U.S.C. § 109(g) that bars one from being a debtor only when a prior "case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case." This statutory bar requires judicial findings of fact that satisfy the statute. A consent order such as the one at issue contains no judicial findings of fact.

■ While this Court can understand the frustration of creditors in serial filings and can sympathize with their efforts to arrive at a final result giving the debtor one last opportunity to restructure or to cure obligations, the Court can not state a per se rule that "last opportunity" orders always will be effective. As this case illustrates, just as did the *Barrett* opinion, there are cases where debtors, who have had more than one chapter 13 opportunity, are able finally to demonstrate good faith, a change in circumstances, and financial ability to fund a successful chapter 13 plan. There are certainly debtors who despite repeat filing are never able to put together an effective or feasible plan. However, this Court can not assume that all debtors fall into the latter category. Thus,

"last opportunity" orders such as the one entered in the Friends' prior case, can not preclude the Bankruptcy Court from a determination that the automatic stay is applicable in a refiling. The Code provides for the automatic imposition of a stay upon the filing of each case; thus, it will be necessary for a court in each case to determine whether the automatic stay does or does not apply.

As Judge Donald observed, this ruling does not mean that a "last opportunity" order will have no effect. As discussed previously, the presence of such an order in a prior case has evidentiary value, and such an order may place upon the debtor an increased burden of showing a sufficient change of circumstances to justify a refiling in the face of such an order. Of course, in many cases, such an order will have a final effect in that the debtors may choose not to refile after the entry of a "last opportunity" order. However, such orders simply can not have the effect of negating the Bankruptcy Code's provisions concerning the automatic stay. Counsel for Chemical asserted to the Court that failure of the Court to honor such "last opportunity" orders would chill work outs between debtors and creditors and would negate finality of orders of the Bankruptcy Court. This Court disagrees. As stated previously, such orders often are effective and often are final. *See* Saharovich, *The Effect Of A "Drop–Dead" Clause In Chapter 13 Cases,* 4 THE MEMPHIS BAR ASSOC. MAGAZINE 9, 12 (Summer 1994) (concluding that such orders often "deter the debtors from refiling"). This Court merely is recognizing that it may not predetermine the finality of such orders for any and all future cases. Such a determination is predominantly a factual one that must be made in each case where the issue arises.

As a result of this conclusion, it may be prudent for a creditor such as Chemical to move for relief from the automatic stay immediately upon the refiling of a bankruptcy case if that creditor holds such a "last opportunity" order from a prior bankruptcy case. At the very least, the creditor proceeds with foreclosure, repossession, or other collection remedies at great risk, as the Code clearly provides that violations of the stay may be remedied, including damages for a willful violation of the stay. 11 U.S.C. § 362(h).

## TRUSTEE'S DEED

The final issue that must be addressed by the Court in this particular proceeding is whether Chemical may continue to retain a trustee's deed subject to its being recorded immediately upon the debtors' default in this case. As stated previously, the Court permitted Chemical to proceed with its nonjudicial foreclosure but to take no further actions concerning the consummation of the foreclosure sale pending further orders of the Court. It having been conceded by the parties that the debtors are on payroll deduction, that both debtors are employed, and that at the present time plan payments are being made, it appears overly harsh to hold a trustee's deed over the debtors' heads with the risk of instant recording upon default. Therefore, the Court directs that Chemical shall not record a trustee's deed without a specific order from this Court so long as this chapter 13 case is pending. In the event of default under this confirmed plan, Chemical may move for relief to record its trustee's deed and such a motion will be scheduled promptly for hearing. Should this chapter 13 case be voluntarily or involuntarily dismissed, the automatic stay of course would terminate, and at that point Chemical would be free to exercise its state law remedies, including the recording of its trustee's deed. Thus, it is obvious that the debtors can not take this case lightly. Should they default in plan payments and should such default result in either relief from the automatic stay or a dismissal of this case, Chemical will be free to record its trustee's deed, without the necessity of conducting another foreclosure sale. However, should the debtors succeed in this chapter 13 plan, upon the completion of the plan payments pursuant to the Court's Order of confirmation and absent any post-confirmation modifications to the plan, the prepetition defaults in the mortgage would have been cured and the mortgage should be reinstated to its previous, prebankruptcy terms and conditions. In the event of a successful completion of this chapter 13 plan, Chemical should not be able to record a trustee's deed without first renoticing and

reconducting a nonjudicial foreclosure sale pursuant to applicable state law. That is, this plan, if successful, would cure any pre-bankruptcy defaults, mandating that a new foreclosure would be required for postdischarge defaults.

▮ As stated at the beginning of this opinion, the debtors did not pursue their claim for damages; however, the Court will observe that Chemical did not violate the automatic stay, as the Court conducted a temporary restraining order hearing prior to the scheduled foreclosure and permitted the foreclosure to proceed under the conditions stated in this Court's prior order. Thus, it would not appear that these debtors are entitled to damages under § 362(h).

An appropriate order will be entered consistent with this Memorandum Opinion.