**David Nathaniel JACKSON, Appellant,**

v.

**Malcolm BEECH et al.**

**David Nathaniel JACKSON**

v.

**Malcolm BEECH et al., Appellants.**

**Nos. 79–1861, 79–2089.**

United States Court of Appeals,
District of Columbia Circuit.

Argued May 14, 1980.
Decided Dec. 19, 1980.

Nelson Deckelbaum, Washington, D.C., for David N. Jackson.

John C. Maginnis, III, Washington, D.C., for Malcolm Beech.

Before TAMM, ROBB and MIKVA, Circuit Judges.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

 The defendants appeal the denial of their motions to permit an answer out of time and to set aside the entry of a default judgment against them. The district court considered the negligent failure to file a timely answer unjustifiable and attributed the negligence of the lawyer to the defendants themselves. Because strong policies favor the resolution of genuine disputes on their merits, negligence of a lawyer is not always imputed to his clients on a motion to set aside the entry of a default judgment. A motion for relief from a default judgment should be granted when, as in the case at bar, the defendants have not willfully defaulted, the set-aside of the default will not prejudice the plaintiff, and the defendants have alleged a meritorious defense. We therefore reverse.

## I. BACKGROUND

### A. The Original Dispute

In February of 1977, plaintiff David Jackson filed a complaint against Malcolm Beech, William Lindsay, Claude Roxborough, Kenneth Cross, and Melchus Davis seeking compensatory and punitive damages for claims sounding in contract and tort, including charges of mismanagement, misrepresentation, and slander. These claims were the result of a disagreement between Jackson, a limited partner in two partnerships, and the defendants, general and limited partners in the partnerships.[1] Jackson had invested $2,500 in the Fox Investments Limited Partnership (Fox, Ltd.) and $7,000 in the Smoke Investments Limited Partnership (Smoke, Ltd.). In addition, Jackson was a nighttime supervisor at Foxtrappe, Inc., a private club owned and managed by Fox, Ltd., and he received $300 per week for these services.

The dispute between Jackson and the other partners began in September of 1975 when his employment with Foxtrappe, Inc. terminated. According to the defendants, Jackson's employment ended after a pay dispute with defendant Beech, an officer of Foxtrappe, Inc. The defendants allege that shortly after Jackson's employment termi-

---

1. Defendants Beech, Lindsay, and Cross were general partners of Smoke, Ltd. Defendants Beech, Lindsay, and Roxborough were general partners of Fox, Ltd. Defendant Davis was a limited partner in Fox, Ltd.

nated, the day manager of the club discovered a discrepancy in the night receipts and that Jackson, when questioned, told defendant Davis that he had merely taken what was owed him. Plaintiff Jackson contends that he demanded an audit of the partnerships and that Beech, Lindsay, and Roxborough fired him in retaliation.

## B. *The Proceedings Below*

As a result of the dispute between the partners in September of 1975, Jackson filed this action in February of 1977. He charged the defendants[2] with securities act violations, breach of the partnership agreements, mismanagement of the partnership businesses, conversion of partnership funds, failure to account for partnership funds, breach of employment contract, and slander.[3] Because the partnership agreements included an arbitration clause, the defendants responded with a motion to stop the proceedings to permit arbitration. On April 28, 1977, the district judge denied this motion because securities violations were alleged; he explained that this result was dictated by a Supreme Court case, *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), which held that an arbitration clause cannot destroy a federal court's jurisdiction over charges of securities violations.[4]

Under rule 12(a) of the Federal Rules of Civil Procedure, the defendant had ten days to file a responsive pleading: an answer was due May 9, 1977. On May 24, 1977, the plaintiff moved for default judgment and, on June 2, 1977, while that motion was still pending, the defendant filed a motion for leave to answer and an answer. This motion stated that the defendants had a meritorious defense and that "the pressure of trials and office work prevented counsel from filing the answer heretofore." The proposed answer was a general denial. The trial judge ordered entry of default judgment on June 6, 1977. No reasons were given for denying the defendants' motion for leave to answer out of time; the judge stated only that he was ordering the entry

2. Not all the defendants were charged on all counts. *See* note 3 *infra*.

3. Count I charged Beech, Lindsay, and Roxborough with securities violations in connection with the sale of the Fox, Ltd. partnership interest to the plaintiff.

 Count II charged Beech, Lindsay, and Cross with securities violations in connection with the sale of the Smoke, Ltd. partnership interest to the plaintiff.

 Count III charged Beech, Lindsay, and Roxborough with breach of oral representations made in connection with the sale of the Fox, Ltd. partnership interest to the plaintiff.

 Count IV charged Beech, Lindsay, and Cross with breach of oral representations made in connection with the sale of the Smoke, Ltd. partnership interest to the plaintiff.

 Count V charged Beech, Lindsay, and Roxborough with conversion of Fox, Ltd. funds, and gross negligence and mismanagment of the Fox, Ltd. partnership assets.

 Count VI charged Beech, Lindsay, and Cross with conversion of Smoke, Ltd. funds, and gross negligence and mismanagement of Smoke, Ltd. partnership assets.

 Count VII charged Beech, Lindsay, and Roxborough with conversion of Fox, Ltd. funds, and failure to account for the same.

 Count VIII charged Beech, Lindsay, and Roxborough with breach of Jackson's employment contract.

 Count IX charged Beech, Lindsay, and Davis with slander.

 Count X charged Beech, Lindsay, and Cross with conversion of Smoke, Ltd. funds, and failure to account for the same.

4. In *Wilko v. Swan*, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953), *only* securities violations were alleged, and the Court merely indicated that an agreement to arbitrate all disputes arising out of a transaction would not bar judicial resolution of a charge that the defendants had violated the securities laws. The Supreme Court did not suggest that allegations of securities violations would give a federal court jurisdiction over other, appended claims. Although *Wilko* indicates that the arbitration clause in the partnership agreements does not bar the plaintiff's litigation of claims based on securities violations, it does not give any guidance as to whether the district court should extend jurisdiction over the claims based on breach of the partnership agreements. Since it is always proper for a court to recognize its lack of subject matter jurisdiction, the trial judge might wish to reconsider, in the light of other cases, whether jurisdiction should have been based on the securities counts which were subsequently dropped. *See, e. g., Sibley v. Tandy Corp.*, 543 F.2d 540 (5th Cir. 1976).

of the default judgment because the time to answer had expired.

The first explanation for the entry of the default judgment was given by the trial judge in his August 19, 1977 memorandum denying the defendants' motion to vacate the entry of the default judgment. This motion was accompanied by an affidavit indicating that the defendants had a meritorious defense. The defendants maintained that they were innocent of all charges, and that the plaintiff was suing in retaliation for the defendants' reasonable suspicion that the plaintiff was responsible for certain missing money. In the motion itself, the defendants stated that the default was due to communications difficulties between the lawyer and the several defendants in dealing with the many issues. The judge concluded that this was not a reasonable explanation for the defendants' "dilatory conduct" and serious disregard of "the time requirements of the Federal Rules." The judge indicated that an affidavit or further explanation would be necessary in order to "demonstrate a good faith effort to offer the Court a basis upon which to excuse the procedural violation" under the "applicable standards of F.R.Civ.P. 60(b), F.R.Civ.P. 55(c)."

The next significant action in the case was a hearing on damages held before a magistrate on November 10–11, 1977. According to the defendants, it was shortly before the deadline for filing objections to the magistrate's report, issued almost a year later in October 1978, that they discovered they were no longer represented by counsel. Their attorney had apparently closed up shop and left town without informing either them or the court of his withdrawal. On December 5, 1978, the defendants filed a motion for an extension of time to file objections, explaining the situation to the judge. The next day, the court adopted the magistrate's recommendations on damages. This order awarded more than $65,000 in damages, and ordered a

further accounting to determine the plaintiff's share of any Smoke, Ltd. revenues after September 30, 1976. Although this order did not resolve all the issues between the parties and did not contain a rule 54(b) certification that any portion of the judgment was final and appealable, it included a statement that the case was dismissed. This error was corrected by a January 19, 1979 order certifying as final and appealable the damage awards on the counts other than those relating to Smoke, Ltd.[5]

The last action in the case relevant to the default issue began with the defendants' January 5, 1979 motion to set aside the default judgment. In this motion, the defendants' new lawyer explained that the default was solely attributable to the "total and absolute negligence" of the defendants' original lawyer. The plaintiff's attorney responded with an affidavit alleging that Roxborough, one of the defendants and a lawyer, was responsible for preparing all pleadings and that the defendants' lawyer was only supposed to file them. The plaintiff's lawyer indicated that his information was based on a conversation between himself and the now-missing attorney. Roxborough then submitted an affidavit stating that, although he and the original lawyer were to discuss strategy and defenses, the lawyer was responsible for submitting the pleadings.

Without referring to defendant Roxborough's affidavit, the court denied defendants' motion to vacate the entry of the default judgment. He gave two reasons for his decision. First, he stated that "[u]ncontested facts alleged and attested to by the plaintiff's attorney ... indicate that the reason for the default actually lies with one of the defendants, who, as an attorney, had undertaken personal responsibility for drafting the pleadings." The second reason was that "[i]n any event, the negligence of an attorney is imputed to his clients, so that regardless of the source of the negligent

---

**5.** Although the December 6, 1978 judgment included the plaintiff's share of Smoke, Ltd. revenues through September 30, 1976, only the damage awards on the counts unrelated to

Smoke, Ltd. (counts I, III, V, VII, VIII, and IX, see note 3 *supra*) were certified as final and appealable.

failure to plead, this court did not err when it refused to set aside the default." We turn now to consider whether these reasons justify the denial of the motion to set aside the default judgment.

## II. DISCUSSION

Default judgments are not favored by modern courts, perhaps because it seems inherently unfair to use the court's power to enter and enforce judgments as a penalty for delays in filing. Modern courts are also reluctant to enter and enforce judgments unwarranted by the facts. This may be why a court must hold a hearing on damages before entering a judgment on an unliquidated claim even against a defendant who has been totally unresponsive. And, as this court pointed out in *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C.Cir.1970) (per curiam), modern procedural reforms were aimed at eliminating technicalities that preclude the substantive resolution of disputes: "The policy underlying the modernization of federal procedure ... [was] the abandonment or relaxation of restrictive rules which prevent the hearing of cases on their merits." *Id.* at 691.

It is true that the decision whether a default judgment should be set aside is one committed to the sound discretion of the trial court. *See, e. g., Keegel v. Key West & Caribbean Trading Co.*, 627 F.2d 372 (D.C.Cir.1980); *Moldwood Corp. v. Strutts*, 410 F.2d 351 (5th Cir. 1969). Given the strong policies favoring the resolution of genuine disputes on their merits, how-

ever, an abuse of discretion in refusing to set aside a default judgment "need not be glaring to justify reversal." *Keegel*, 627 F.2d at 374. *Accord, e. g., H. F. Livermore Corp.*, 432 F.2d at 691.

Before considering whether the district court properly refused to set aside the default judgment in the case at bar, we note that there is a distinction between the appropriate standard for setting aside a *default* and that appropriate for setting aside a *default judgment*. *See, e. g.*, 10 C. Wright & A. Miller, Federal Practice and Procedure § 2694 (1973). Once a defendant fails to file a responsive answer, he is in *default*, and an entry of *default* may be made by either the clerk or the judge. A *default judgment* can be entered by a clerk only if a claim is liquidated or, if a claim is unliquidated, by the judge after a hearing on damages. A *default* can be set aside under rule 55(c) for "good cause shown," but a default that has become final as a *judgment* can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders.[6]

In this case, the original entry of default judgment on June 6, 1977 was premature because the plaintiff's claim was as yet unliquidated. It was not until December 6, 1978 that even part of plaintiff's claim was liquidated. And it was not until January 19, 1979 that the damage awards on any of the claims were certified as final and appealable under rule 54(b). Only then did the standard of rule 60(b), rather than the lower standard of rule 55(c), become applicable.[7] Yet from the very first expla-

---

**6.** Rule 60(b) provides in pertinent part:

*Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc.* On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judg-

ment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

**7.** Rule 55(c) states: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Rule 60(b) can arguably be interpreted to apply as soon as there is a judgment, even if that judgment is not final and appealable. Under this construction, the standard of rule 60(b)

nation of the default decision, the court below stated that it was using the "applicable standards of F.R.Civ.P. 60(b), F.R.Civ.P. 55(c)." Rule 60(b)'s standard did become applicable when the damage awards became final and appealable, and we consider the denial of defendants' final motion to set aside the default judgment reversible error under that standard. Given this holding, we need not decide whether it was also error to deny defendants' earlier motions under the lower standard of rule 55(c).

We turn now to consider the circumstances under which it is appropriate for a district court to refuse to set aside a default or default judgment. As explained above, strong policies favor resolution of disputes on their merits:

> [T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection.

*H. F. Livermore Corp.*, 432 F.2d at 691.

This is not a case in which a default judgment was necessary because the defendants were "essentially unresponsive." Within twenty days of the filing of the complaint, the defendants moved to stop proceedings pending arbitration, and, by the time the default judgment was entered, they had filed a motion for permission to answer out of time and an answer. Since this case does not present the problem that default judgments were designed to handle—a totally unresponsive party—the district court should have considered three criteria in deciding whether to set aside the default: "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." *Keegel*, 627 F.2d at 374 (citations

omitted). Balancing these factors as they appear in the case at bar indicates that the default should have been set aside.

The first factor to be considered is whether the default was willful. Although the court below did not directly address this issue, it did consider whether the default was due to negligence on the part of either the defendants or their attorney. Although some cases have held that *negligence* is less than the *willfulness* necessary to justify the refusal to set aside a default judgment, *see, e. g., Tolson v. Hodge*, 411 F.2d 123, 130 (4th Cir. 1969) (gross negligence is appropriate standard), we need not address that issue in this case. Even if simple negligence were sufficient to support a finding that the defendants' default was willful, such a conclusion would be inappropriate on the record before this court.

The judge below denied the defendants' motion to set aside the default judgment because (1) there was an uncontroverted allegation that one of the defendants was himself responsible for the default because he had agreed to prepare the pleadings, and (2) even if the default were solely due to negligence of the defendants' lawyer, that negligence should be attributed to the defendants. Both of these statements incorrectly state the law applicable to this case.

■ The judge erred in thinking that there was uncontested evidence that one of the defendants was responsible for the preparation of the answer: the defendants had submitted an affidavit denying any such agreement. On a motion for relief from the entry of a default or a default judgment, all doubts are resolved in favor of the party seeking relief. *See, e. g., Tolson*, 411 F.2d at 130 (vacating default judgment). Considered in this light, the evidence cannot support a finding that defendant Roxborough was to blame for the failure to file a timely answer.

would be applicable from December 6, 1978, the date on which there was a non-final judgment. Even after a judgment is entered, however, the rule 55(c) standard should apply unless the default judgment is final and appealable. *See* 6 J. Moore, Federal Practice & Proce-

dure ¶ 55.10, at 55–237 (2d ed. 1976). Rule 60(b), by its terms, applies only to final judgments, *see* note 6 *supra*, and a court with continuing jurisdiction over a case always has plenary power to amend or alter its interlocutory orders. *See* 7 *id.* ¶ 60.20, at 242 (1979).

In addition, the judge erred in thinking it proper to impute the conduct of the attorney to his clients in considering the motion to set aside the default judgment in the case at bar. Default judgments were not designed as a means of disciplining the bar at the expense of the litigants' day in court. As this court pointed out in *Barber v. Tuberville*, 218 F.2d 34, 36 (D.C.Cir.1954), on a motion to set aside a default or default judgment, "courts have been reluctant to attribute to the parties the errors of their legal representatives." In *Barber*, the court considered the lawyer negligent in failing to file an answer in one case because settlement negotiations were taking place in another case. The court held that the default judgment should, nevertheless, be set aside because the defendant was not personally negligent.

Similarly, in *L. P. Steuart v. Matthews*, 329 F.2d 234 (D.C.Cir.1964), a default judgment was entered against the plaintiff for failure to prosecute a personal injury claim. Two years later, the plaintiff moved to have the claim reinstated. No action had been taken during those years, although the plaintiff's lawyer knew of the entry of the default. This court held that the lower court properly set aside the default because there was no evidence that the plaintiff personally knew of it—even though the lawyer's gross negligence was inexcusable.

It is necessary to conclude that, in this case, the defendants' default was not willful. Construing disputed or ambiguous facts in the light most favorable to defendants, the defendants did not even know of the default or of their lawyer's negligence. And, since the negligence of a lawyer is not imputed to his clients on a motion to set aside a default judgment, the defendants were not willfully, or even negligently, responsible for the default.

The second factor to be considered on a motion to set aside a default or a default judgment is the extent to which the set-aside would prejudice the plaintiff. When the defendants filed their original motion for leave to answer out of time, the delay of twenty-four days would not have injured the plaintiff in any way. Indeed, the plaintiff does not argue that he will be prejudiced by a set-aside even at this late date. It is true that time and energy have been spent on the damages hearing; but the magistrate's report and recommendations contained glaring errors, at least one of which is still part of the judgment.[8] It cannot be argued that justice requires the enforcement of a judgment based on that report to save the time consumed in two days of hearings and in preparing the eight-page report.[9]

The defendants also meet the final criterion: they alleged a meritorious defense. The defendants have indicated in an affidavit that they had reason to suspect that the plaintiff was responsible for missing money and that this action is motivated by a desire to retaliate against the defendants rather than by any meritorious claims.

## CONCLUSION

The court below thought negligence by one defendant or by the defendants' attorney sufficient to justify denying a motion to vacate a default judgment. This was error. The trial court should have considered the wilfulness of the default, the possibility of prejudice to the plaintiff if the default judgment was set aside, and the merit of defendants' defense. In analyzing

8. The judgment awards damages of $5,000 on the slander count against defendant Roxborough even though he is not charged in that count of the complaint. *See* note 3 *supra*. Other errors were corrected by the trial judge. Although the judge initially adopted the magistrate's report in its entirety, he later decreased the damage award by approximately $25,000. He eliminated an award of attorney's fees and damages for breach of an employment contract. The plaintiff had no basis for claiming an award of attorney's fees, which are not ordinarily awarded by American courts. And there was no employment contract between the plaintiff and the defendants; the plaintiff was not employed by the defendants or the partnership but by the Foxtrappe Club, Inc., a separate corporation.

9. In addition, it may not be necessary to provide a judicial forum for all the charges. *See* note 4 *supra*.

these factors as they appear in the case at bar, the court should have construed all ambiguous or disputed facts in the light most favorable to the defendants. Had this been done, the defendants' motion to vacate the entry of the default judgment would have been granted. We therefore reverse and remand for entry of an order setting aside the default judgment and for further proceedings not inconsistent with this decision.

*Reversed and remanded.*