**CAPITAL YACHT CLUB., Plaintiff,**

v.

**VESSEL AVIVA, Her Engines, Masts, Anchors, Cables, Chains, Rigging, Tackle, Apparel, Furniture, Dinghy, and All The Necessaries Therewith Appertaining, in rem, et al., Defendants.**

**Civil Action No. 04–0357 (RMU). Document Nos. 34, 42, 43.**

United States District Court, District of Columbia.

May 16, 2005.

**MEMORANDUM OPINION**

URBINA, District Judge.

CONDITIONALLY GRANTING THE DEFENDANT'S MOTION TO SET ASIDE DEFAULT; DENYING THE PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT; DENYING THE PLAINTIFF'S SHOW CAUSE MOTION

## I. INTRODUCTION

This matter comes before the court on *in personam* defendant Larry Kilstrup's motion to set aside entry of default and the plaintiff's motions for entry of default judgment and for a show cause order. The plaintiff, Capital Yacht Club ("CYC"), filed a complaint in March 2004 to enforce its lien on the vessel *AVIVA* pursuant to the Federal Maritime Lien Act. In its complaint, the plaintiff also named Mr. and Mrs. Kilstrup (the master and owner of the boat, respectively) as *in personam* defendants. Because the court finds that the Clerk's entry of Mr. Kilstrup's default should be vacated, the court denies without prejudice the plaintiff's motion for entry of default judgment. In light of the development of this case, however, the court conditions the vacatur of default on Mr. Kilstrup posting a bond sufficient to cover certain costs. Finally, the court denies the plaintiff's motion for a show cause order because the motion improperly seeks to hold an *in personam* defendant responsible for the *in rem* defendant's decision not to post bond, a decision the *in rem* defendant was entitled to make.

## II. BACKGROUND

The court has previously described the background of this case and limits its discussion accordingly. The plaintiff filed suit on March 5, 2004 against *in rem* defendant *AVIVA* (a 1959 55 foot Chris Craft Cruiser wooden vessel with a 13 foot Boston Whaler dinghy and miscellaneous appurtenances) and *in personam* defendants Larry Kilstrup and Vivian Kilstrup. Compl. ¶¶ 3–5. On March 8, 2004, the court issued an order to arrest the *AVIVA,* and the United States Marshal executed the warrant shortly thereafter. Subsequently the court appointed the CYC as the substitute custodian of the vessel.[1]

Lisa Petti Llis, Ellicott City, MD, for Plaintiff.

James Joseph Levin, Law Offices of James J. Levin, P.C., Edgewater, MD, Todd D. Lochner, Lochner & Schwenk, LLC, Annapolis, MD, for Defendants.

1. "As an alternative to placing a keeper aboard a vessel, under the Marshal's surveillance, the plaintiff may choose to have a substitute custodi-an appointed. The appointment is conditioned on both the acceptance by the substitute custodian of all responsibility and liability during the

The court held a post-arrest hearing on October 14, 2004 pursuant to Rule E(4)(f) of the Supplemental Rules for Certain Admiralty and Maritime Claims. SUPP. R. ADM. E(4)(f) (stating that "[w]henever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which the plaintiff shall be required to show why the arrest or attachment should not be vacated"). At the hearing, the court held that the plaintiff demonstrated by a preponderance of the evidence that a lien exists. The court thus denied the *in rem* defendant's motion to vacate the arrest and ordered the *in rem* defendant to post a $40,000 bond by November 1, 2004. Tr. at 85 (Oct. 14, 2004).[2] Four days later, the court denied the *in rem* defendant's motion to dismiss for lack of subject-matter jurisdiction.

Vivian Kilstrup made a restricted appearance[3] as owner of the *AVIVA* on March 25, 2004, but has not answered in her alleged capacity as an *in personam* defendant. *In personam* defendant Larry Kilstrup's answer was due February 2, 2005.[4] He failed to answer by that deadline, however, and on March 7, 2005, the plaintiff submitted an affidavit for default. The Clerk of the Court entered default that day. On April 5, 2005, Mr. Kilstrup moved to set aside default, simultaneously and provisionally entering his answer to the complaint. On April 6, 2005, the plaintiff moved for entry of final judgment (the defendant filed an opposition to this motion on April 15, 2005). On April 6, 2005, the plaintiff also moved for an order directing all defendants to show cause why

they should not be held in contempt for failing to post the bond the court referenced in the post-arrest hearing.

## III. ANALYSIS

### A. Default

The procedural posture of this case has a slight twist. Although Mr. Kilstrup moved to vacate default, the plaintiff moved for final judgment before opposing Mr. Kilstrup's vacatur motion. The plaintiff contends that the parties submitted their motions on the same day, Pl.'s Reply to Def.'s Opp'n to Pl.'s Mot. for Final Judg. by Default at 2 n. 2, but the docket and the plaintiff's own certificate of service indicate that the plaintiff electronically submitted its motion for final judgment on April 6, one day after Mr. Kilstrup's motion for vacatur. Why does this matter? The plaintiff focuses on language in Federal Rule of Civil Procedure 55(b)(1) stating that the Clerk of the Court "shall," in certain circumstances, enter default judgment after entry of default. *Id.* at 2 n. 1; *see generally* FED.R.CIV.P. 55(b). Thus, by getting in its motion for final judgment before the defendant's motion for vacatur, the plaintiff argues that default judgment is mandatory and that, coextensively, the higher burden for upsetting a default judgment attaches rather than the lower burden for vacatur of default.

The plaintiff's instinct is correct: unlike some courts which apply the same standard to vacatur of default and vacatur of default judgment, *see, e.g., Chrysler Credit Corp. v. Macino,* 710 F.2d 363, 367 (7th Cir.1983)

---

appointment and on the moving party's agreement to hold the United States and the Marshal harmless from any claims arising during the substitute custodianship." *Donald D. Forsht Assocs., Inc. v. Transamerica ICS, Inc.,* 821 F.2d 1556, 1560 (11th Cir.1987). The substitute custodian typically reduces the costs and expenses associated with the Marshals supervising the vessel. *E.g., Hudson Harbor 79th Street Boat Basin, Inc. v. Sea Casa,* 469 F.Supp. 987, 990 (S.D.N.Y. 1979).

2. This bond was to cover *custodia legis* and related fees but not legal expenses. Tr. at 83–85 (Oct. 14, 2004).

3. Rule E(8) of the Supplemental Rules for Certain Admiralty and Maritime Claims provides that "[a]n appearance to defend against an admi-

ralty and maritime claim with respect to which there has issued process in rem, or process of attachment and garnishment, may be expressly restricted to the defense of such claim, and in that event is not an appearance for the purposes of any other claim with respect to which such process is not available or has not been served." SUPP. R. ADM. E(8).

4. The complaint lists Mr. Kilstrup as the "Master of the subject vessel with responsibilities for procuring necessaries therefor" and as the person whose name appears on the "Membership Agreement and Dockage Agreement" with the plaintiff. Compl. ¶ 4.

(holding that "the standard to set aside an entry of default under Rule 55(c) is essentially the same as the standard for vacating a default judgment under Rule 60(b)"), in this circuit courts grant vacatur of default more freely than vacatur of default judgment, *Jackson v. Beech,* 636 F.2d 831, 835 (D.C.Cir. 1980) (holding that a "default can be set aside under rule 55(c) for 'good cause shown,' but a default that has become final as a judgment can be set aside only under the stricter rule 60(b) standards for setting aside final, appealable orders"). But here the defendant's motion for vacatur came before the court prior to the plaintiff's motion for final judgment. Thus, assuming *arguendo* that such a race could have an impact on the standard the court applies, the court determines that the plaintiff lost that race. Accordingly, in the analysis that follows, the court applies the lower burden.

### 1. Legal Standard for Setting Aside Default

 "Once a defendant fails to file a responsive answer, he is in default, and an entry of default may be made by either the clerk or the judge." *Jackson,* 636 F.2d at 835. "[S]trong policies favor the resolution of genuine disputes on their merits," however, *id.* at 836, and under Federal Rule of Civil Procedure 55(c) a court has the discretion to set aside entry of default for "good cause shown," FED.R.CIV.P. 55(c). To demonstrate good cause, the court should consider three criteria, resolving all doubts in favor of the party seeking relief from the default: (1) whether the default was willful, (2) whether a set-aside would prejudice plaintiff, and (3) whether the defendant has presented a meritorious defense. *Whelan v. Abell,* 48 F.3d 1247, 1259 (D.C.Cir.1995); *Jackson,* 636 F.2d at 836; *see also* LCvR 7(g) ("providing that a motion to vacate an entry of default . . . shall be accompanied by a verified answer presenting a defense sufficient to bar the claim in whole or in part").

**5.** The plaintiff lists a variety of alleged failures of Mr. Kilstrup concerning his responsibilities to the plaintiff, Pl.'s Opp'n to Def.'s Mot. at 5, but those responsibilities do not amount to disregard of court-imposed duties. The plaintiff also cites the defendant's refusal to waive formal service.

### 2. The Court Conditionally Sets Aside the Default

#### a. Willfulness

 The court need not find bad faith to conclude that the defendant acted willfully. *Jackson,* 636 F.2d at 836 (assuming without deciding that simple negligence can support a finding of willful default); *cf. Gucci Am., Inc. v. Gold Center Jewelry,* 158 F.3d 631, 635 (2d Cir.1998). Mr. Kilstrup argues that the delay was not willful and that he failed to submit a timely answer "[d]ue to the press of business and travel." Def.'s Mot. to Set. Aside Default ("Def.'s Mot.") at 1. Buoying up this argument, Mr. Kilstrup cites to work-related projects that "have taken him away from home for months at a time" and claims that he "has been involved in such a project since shortly after having been served in this matter." *Id.*

The court is not quite sure what to make of Mr. Kilstrup's statement that he "has been involved in such a project since shortly after having been served in this matter." *Id.* What Mr. Kilstrup appears to be saying is that he was not actually involved in a "project" when he was served but started such a "project" soon thereafter. Under this set of facts, the defendant has not entirely accounted for his delay, because presumably he could have dealt with the service prior to embarking on the "project" that was to begin "shortly." And as the plaintiff points out, the defendant has not produced any evidence corroborating his assertions. Pl.'s Opp'n to Def.'s Mot. at 6.[5] Nevertheless, the court is ultimately left with a doubt (albeit a very strong doubt) which it resolves in favor of Mr. Kilstrup. *Jackson,* 636 F.2d at 836.

#### b. Prejudice

 "[D]elay in and of itself does not constitute prejudice[.]" *KPS & Assocs., Inc. v. Designs By FMC, Inc.,* 318 F.3d 1, 15 (1st Cir.2003) (noting that "in the context of a Rule 55(c) motion, delay in and of itself does

*Id.* at 2. The defendant has a right to refuse to waive formal service, FED R. CIV. P. 4(d), so the court will not hold this refusal against him. At the appropriate time, however, the court will entertain a motion to recover service expenses. FED. R. CIV P. 4(d)(2).

not constitute prejudice. The issue is not mere delay, but rather its accompanying dangers: loss of evidence, increased difficulties of discovery, or an enhanced opportunity for fraud or collusion") (internal quotations omitted); *see also Keegel v. Key West & Caribbean Trading Co., Inc.*, 627 F.2d 372, 374 (D.C.Cir.1980) (stating that the fact that "setting aside the default would delay satisfaction of plaintiffs' claim, should plaintiffs succeed at trial, is insufficient to require affirmance of the denial"). Furthermore, an absence of prejudice to the plaintiff does not *per se* entitle defendant to relief from the judgment. *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998); *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir.1993).

▉ The defendant states without elaboration that vacating the default "will not result in any prejudice to Plaintiff." Def.'s Mot. at 1. The plaintiff has a bit more to say. Pl.'s Opp'n to Def.'s Mot. at 11 (citing "attorneys fees and time in having to proceed with discovery, depositions, a motion for summary judgment and possible trial, all of which will further delay these proceedings and delay recovery to Capital Yacht Club"). As indicated above, delay and legal costs are part and parcel of litigation and typically do not constitute prejudice for the purposes of Rule 55(c). Thus, the burdens the plaintiff cites in its opposition do not amount to prejudice.

### c. Meritorious Defense

▉ "[T]he movant is not required to prove a defense, but only to assert a defense that it may prove at trial." *Whelan v. Abell*, 48 F.3d 1247, 1259 (D.C.Cir.1995); *Keegel*, 627 F.2d at 374 (stating that "[l]ikelihood of success is not the measure. Defendants' allegations are meritorious if they contain 'even a hint of a suggestion' which, proven at trial, would constitute a complete defense"). The D.C. Circuit has allowed "somewhat broad and conclusory" allegations to suffice. *Keegel*, 627 F.2d at 374. Mr. Kilstrup's defense is essentially that (a) proper termination of his membership is a condition precedent to the damages the plaintiff seeks, (b) the plaintiff improperly terminated Mr. Kilstrup's membership, and (c) the plaintiff therefore is not entitled to the amounts it seeks. *E.g.*, Def.'s Mot., Ex. A (Aff. Larry Kilstrup). The court determines that these allegations constitute a sufficient potential defense.[6]

### d. The Court Imposes a Condition on Vacatur of Default

▉ The *custodia legis* fees in this case accumulate every day. By virtue of his contractual arrangement with CYC, if CYC prevails in this litigation, Mr. Kilstrup may be personally responsible for those and related fees to the extent that resolution of the *in rem* component of this case results in a deficiency. Compl., Ex. A, at Art. XI, Sec. 9 (CYC Bylaws) (providing that "legal and/or collection fees associated with the collection of outstanding debts shall be borne by the debtor"); *cf. Dowell Division of the Dow Chemical Co. v. Franconia Sea*, 504 F.Supp. 579, 581 (S.D.N.Y.1980) (holding that "[w]hen a maritime lien attaches, the plaintiff may pursue an *in rem* action against the vessel involved. The plaintiff also has the option of bringing an *in personam* action against any party that is directly liable in contract, tort, or some other substantive law, and a shipowner may be such a party. In the absence of a separate basis of substantive liability, however, the shipowner cannot be held per-

---

6. The fact that this case may hinge on the resolution of those allegations does not alter this court's admiralty jurisdiction, for as this court has already held, the dispute over the membership agreement is not so qualitatively different than the more customary subject-matter jurisdiction disputes that this court faces or the analysis courts must often engage in to determine whether a contract is maritime in nature. *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 302 (2d Cir.1987) (examining the services to be performed under a contract—such as "preparation and processing of export declarations, deliv- ery orders, dock receipts, bills of lading, and advance notification of shipment"—to determine whether or not they were preliminary services incidentally related to a maritime contract); *Shulman v. Voyou, LLC*, 305 F.Supp.2d 36, 39– 41 (D.D.C.2004) (determining the residences of the parties for diversity purposes); *Macharia v. United States*, 238 F.Supp.2d 13, 19–21 (D.D.C. 2002) ("examining facts related to where the alleged negligent actions took place, at home or abroad, and whether [the d]efendant's actions were in fact discretionary in nature").

sonally liable to the plaintiff merely because a maritime lien has come into existence").

■ "In determining whether to exercise its discretion to set aside a default, ... a district court has inherent power to impose a reasonable condition on the vacatur in order to avoid undue prejudice to the opposing party." *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 515–16 (2d Cir.2001) (affirming lower court's imposition of a bond requirement as a condition for vacatur) (citing authorities); *Thorpe v. Thorpe*, 364 F.2d 692, 694 (D.C.Cir.1966) (stating that "[i]n granting a motion to vacate a default judgment the District Court may impose reasonable conditions").[7] "The condition most commonly imposed is that the defendant reimburse the plaintiff for costs-typically court costs and attorney's fees-incurred because of the default." *Thorpe*, 364 F.2d at 694. Moreover, "[i]t may also be appropriate, in some cases, for the defendant to be required to post bond to secure the amount of the default judgment pending trial on the merits." *Id.* In those situations, however, the court should make "supporting findings to show that it represents a reasonable exercise of discretion." *Id.*[8]

The court determines that it represents a reasonable exercise of judicial discretion to condition vacatur of the default on Mr. Kilstrup posting a bond sufficient to cover the *custodia legis* fees accumulated in this case up to April 5, 2005, the date of Mr. Kilstrup's answer. As the court has already indicated, there is a serious question concerning whether the sale of the *res* at issue will cover the *in personam* defendant's alleged contractual obligations. Mr. Kilstrup's

default, which the court is willing to excuse, has nevertheless driven up the *custodia legis* fees in this case. *See* Pl.'s Mem. in Support of Final Judgment at 3 (calculating *custodia legis* fees at $68.75 per day). At the same time, the court does not want to encourage a plaintiff to delay interlocutory sale and thereby increase *custodia legis* fees once the plaintiff knows that the *in rem* defendant will not post a bond—especially when, as in this case, the plaintiff is the substitute custodian and thus the recipient of the *custodia legis* fees. *See* Supp. R. Adm. E(9)(b)(i). Accordingly, the court determines that its vacatur of default will become unconditional only if Mr. Kilstrup posts a bond by June 7, 2005 covering the *custodia legis* fees in this case accumulated (at $68.75 per day) up to April 5, 2005. If Mr. Kilstrup fails to post a bond by that date, the court will entertain a new motion for default judgment.

## B. The Court Denies the Plaintiff's Show Cause Order

■ The plaintiff properly notes, Pl.'s Show Cause Mot. at 1, that on October 14, 2004 court ordered the *in rem* defendant to post a $40,000 bond by November 1, 2004, Tr. at 85 (Oct. 14, 2004). As of today, the *in rem* defendant has not posted that bond. The plaintiff thus asks the court to order the *in rem* and *in personam* defendants to show cause why they should not be found in contempt of court. Pl.'s Show Cause Mot. at 2. The defendants oppose this motion on the grounds that the court lacked personal jurisdiction over the putative *in personam* defendants at the time of the October 14, 2004 post-arrest hearing and that posting a bond

---

7. *See also* Supp R. Adm E(1)(b) (stating that, "the court may, on the filing of the complaint or on the appearance of any defendant, claimant, or any other party, or at any later time, require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court").

8. The court notes that *Thorpe v. Thorpe*, which allows the court to impose conditions on vacatur, including the posting of a bond, concerned vacatur of default judgment, not an entry of default. 364 F.2d at 694. Moreover, *Thorpe* located such

authority in the language of Rule 60(b), which provides for relief from default judgment "upon such terms as are just." *Id.* (citing Fed R.Civ.P. 60(b)). This court does not read *Thorpe* to limit a court's authority to impose the requirement of a bond as a condition of vacatur to default judgments versus entries of default. On the contrary, the court's authority to impose a bond requirement stems from its general inherent powers, regardless of whether Rule 60(b) is at issue. *Powerserve*, 239 F.3d at 515. Naturally, of course, whatever the context might be, the court must insure that the conditions of vacatur are such that they do not raise due process concerns. *Thorpe*, 364 F.2d at 695.

is a right, not an obligation. Defs.' Opp'n to Pl.'s Show Cause Mot. at 1.

■ The court agrees with the defendants that a show-cause order is improper. By posting a bond, the owner of a vessel can secure its release. SUPP. R. ADM. E(5). Indeed, if an owner posts a bond, the court must release the vessel. *Gerard Const., Inc. v. M/V Virginia,* 480 F.Supp. 488, 490 (E.D.Pa.1979) (noting that "attachment or arrest of property can have an extremely disrupting effect upon the owners or possessors of the property, and thus upon maritime commerce"). Release by bond, however, is a privilege (of which most owners partake), not an obligation. *See Ferrous Financial Services Co. v. O/S Arctic Producer,* 567 F.Supp. 400, 401 (W.D.Wash.1983) (ordering interlocutory sale over the defendants' objections that they were financially unable to obtain a bond for release and that the sale thus constituted a deprivation of property without due process). Thus the Supplemental Rules for Certain Admiralty and Maritime Claims provide for interlocutory sale of the *res* when

(A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

(B) the expense of keeping the property is excessive or disproportionate; or

(C) there is an unreasonable delay in securing release of the property[.]

SUPP. R. ADM. E(9)(b)(i). To effect a sale, however, "a party, the marshal, or other person having custody of the property" must move the court, *id.,* and the court has not received such a motion. *See generally Salazar v. Atlantic Sun,* 881 F.2d 73, 78–79 (3d Cir.1989) (describing an interlocutory sale following failure to post bond).

It is unclear what the *AVIVA* will fetch in a sale. *See, e.g.,* Tr. at 30 (Oct. 14, 2004)

(noting, *inter alia,* maintenance problems with the vessel). The plaintiff no doubt has this in mind in its request to extend the arrest of the *res* in this case to a total lockdown of the Kilstrups. *See* Pl.'s Mem. in Support Mot. Show Cause at 3 (proposing that the court should order "an immediate body attachment of the *in personam* defendant" if the defendant does not post bond). This rather snarky proposal goes way beyond the scope of this court's October 14, 2004 bond order—which the court quite clearly limited to its *in rem* jurisdiction, Tr. at 81–85 (Oct. 14, 2004)—and exceeds the conceivable boundaries of an *in rem* proceeding, *e.g., Merchants Nat. Bank v. Dredge General G.L. Gillespie,* 663 F.2d 1338, 1347 (5th Cir.1981) (noting that, "[b]ecause the lienor has an interest in the vessel, his rights are limited to the value of the vessel"). As the defendant acknowledges, the plaintiff's proper remedy is to seek interlocutory sale.[9] Thus, the court· denies the plaintiff's motion for a show cause order.

## IV. CONCLUSION

For the foregoing reasons, the court conditions the vacatur of default on Mr. Kilstrup posting a bond sufficient to cover the *custodia legis* fees accumulated in this case (at $68.75 per day) up to April 5, 2005 (for a total of $26,812.50). Mr. Kilstrup shall post this bond by June 7, 2005. Furthermore, the court denies the plaintiff's motions for default judgment and for a show cause order. An order consistent with this Memorandum Opinion is separately and contemporaneously issued on this 16th day of May, 2005.

9. Def.'s Opp'n to Pl.'s Show Cause Mot. at 7 (noting that "Defendant vessel and owner decided it was not reasonable to secured the bond, and thereby accepted the consequences that the vessel is still under arrest and at risk of sale as a foreclosure on the maritime lien"). One cannot help but wonder, as does the plaintiff, if the defendants derive some satisfaction from forcing the sale upon the plaintiff, who may have difficulty obtaining what the bond would have more efficaciously provided. The plaintiff's efforts to pierce the *in rem* veil as it were evidence its concern about this course of events unfolding. *See also* Pl.'s Mot. for Final Judg. by Default, Ex. A, at 3–4 (containing diary entries revealing the plaintiff's legal strategy). The court's imposition of a conditional vacatur should allay these concerns but is not in any way based on the plaintiff's suggestion of an ulterior motive.