Mica SAINT–JEAN, et al., Plaintiffs,

v.

DISTRICT OF COLUMBIA PUBLIC
SCHOOLS DIVISION OF TRANS-
PORTATION, et al., Defendants.

Civil Action No. 08–1769 (RWR).

United States District Court,
District of Columbia.

March 31, 2011.

Nicholas Woodfiel, R. Scott Oswald, The Employment Law Group, P.C., Washington, DC, for Plaintiffs.

Michelle Smith, Washington, DC, pro se.

### MEMORANDUM OPINION AND ORDER

RICHARD W. ROBERTS, District Judge.

The plaintiffs have renewed their motion for default judgment under Rule 55(b)(2) against pro se defendant Michelle Smith ("Smith"), their former supervisor in the District of Columbia's Division of Transportation ("DOT"), in this case brought under the Fair Labor Standards Act ("FLSA"). Fed.R.Civ.P. 55(b)(2); 29 U.S.C. § 201, *et seq.* They argue that Smith's repeated failure to file responsive pleadings and to otherwise defend herself in this action has prevented the timely resolution of their claims. Though Smith's nonfeasance has halted the adversary process as to her, the motion for default judgment will be denied because the plaintiffs appear to have failed to state claims against her.

### BACKGROUND

Smith's unresponsiveness is well-documented. Plaintiffs filed the complaint on October 16, 2008 and, on November 2, 2008, served Smith with both a copy of the complaint and a summons. On DOT's motion, the court then extended the filing deadline for the defendants' answers to December 19 of that year. Smith failed to answer or otherwise respond to the complaint by the designated deadline. Following the clerk's entry of default against Smith on November 26, 2008, the plaintiffs filed the first of four motions for default judgment against Smith on December 3, 2008. As of December 23, 2008, Smith had neither filed an answer nor entered an appearance. She was ordered to show cause by January 6, 2009 why default judgment should not be entered against her. (Order to Show Cause at 1.) The plaintiffs filed a second motion for default judgment on January 13, 2009, citing Smith's failure to meet the January 6 deadline.

The first amended complaint, filed on January 15, 2009, mooted both motions for

default judgment. Smith answered the amended complaint on January 26, 2009. (Pls.' Mem. in Supp. of Mot. for Def. Judg. ("Pl.'s Mem.") at 2; Def. DOT's Response to Pls.' Renewed Mot. For Def. Judg. ("DOT's Resp.") at 3.) However, Smith's answer was unsigned. Despite this court's May 11, 2009 Order directing her to do so, Smith failed to sign the answer in compliance with Rule 11(a). Fed.R.Civ.P. 11(a). Accordingly, Smith's answer was stricken from the record on February 2, 2010. Smith has not filed any other pleadings since.

■ The plaintiffs filed a third motion for default judgment against Smith on February 12, 2010. However, the motion was denied as premature for failure to first secure entry of default under Fed.R.Civ.P. 55(a). Once the Clerk entered default on June 1, 2010, the plaintiffs moved for default judgment for a fourth time, arguing that Smith's repeated failure to meet court-ordered deadlines warrants default judgment. Smith neither moved to set aside entry of default under Rule 55(c), nor opposed the plaintiffs' motion.[1]

## DISCUSSION

■ Default judgments penalize parties for procedural deficiencies, and are generally disfavored. *Jackson v. Beech,* 636 F.2d 831, 835 (D.C.Cir.1980); *see. also*

*Webb v. District of Columbia,* 146 F.3d 964, 971 (D.C.Cir.1998). Courts "universally" prefer "trial on the merits." *Keegel v. Key West & Caribbean Trading Co., Inc.,* 627 F.2d 372, 375 (D.C.Cir.1980) (internal quotations and citations omitted). However, an "essentially unresponsive" party whose default is plainly willful cannot be permitted to halt the adversary process. *Mwani v. bin Laden,* 417 F.3d 1, 7 (D.C.Cir.2005) " 'In that instance, the diligent party must be protected lest [s]he be faced with interminable delay and continued uncertainty as to [her] rights.' " *Id.* (quoting *Jackson,* 636 F.2d at 836). Courts have construed as plain and willful default a party's failure to respond to "either the summons and complaint, the entry of default, or the motion for default judgment." *District of Columbia v. Butler,* 713 F.Supp.2d 61, 64 (D.D.C.2010).

■ Where, as here, the Clerk has already entered default, "the court construes all well-pleaded allegations in the complaint as admitted." *Boland v. Elite Terrazzo Flooring, Inc.,* 763 F.Supp.2d 64, 68 (D.D.C.2011). A default judgment may establish the defaulter's "liability for [only] well-pleaded allegations of the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. Zak Architectural Metal and Glass, LLC,* 635 F.Supp.2d 21, 24 (D.D.C. 2009) (citing *Brock v. Unique Racquetball*

---

1. DOT opposes the renewed motion for default judgment as premature. (DOT's Resp. at 2.) DOT, which concedes that the Clerk's entry of default was appropriate (*id.* at 3), urges against "enter[ing] default judgment against [Smith] unless and until [DOT] ... proceed[s] on the merits [as] to liability and the Court [holds] a hearing [on] damages." (*Id.* at 4) (citing *In re Uranium Antitrust Litigation,* 617 F.2d 1248 (7th Cir.1980)). However, entering default judgment need not await a hearing to fix damages for default. *Fanning v. Big Warrior Corp.,* 707 F.Supp.2d 8, 10 (D.D.C.2010). A plaintiff must not only claim but prove her entitlement to the

amount of damages in her motion for default judgment. *Id.* Accordingly, the court's "independent determination of the sum to be awarded" is guided by the plaintiffs' "detailed affidavits or documentary evidence" demonstrating "the appropriate sum for ... judgment." *Id.* Contrary to DOT's contention, "no hearing is needed to (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or (D) investigate any other matter." *District of Columbia v. Butler,* 713 F.Supp.2d 61, 64 (D.D.C.2010) (citing Fed. R.Civ.P. 55(b)(2)). (*Compare* DOT's Opp. at 4.)

& Health Clubs, Inc., 786 F.2d 61, 65 (2d Cir.1986)). A motion for default judgment will be denied unless the allegations in the complaint are legally sufficient to make out a claim. See Aldabe v. Aldabe, 616 F.2d 1089, 1092 (9th Cir.1980).

## I. FLSA CLAIMS

"The FLSA provides affected employees with a cause of action to recover for violation of its overtime provision," Figueroa v. D.C. Metro. Police Dep't, 633 F.3d 1129, 1132 (D.C.Cir.2011) (citing 29 U.S.C. § 207(a)(1)), "which ordinarily requires employers to pay employees time-and-one-half for hours worked beyond forty per week[.]" Smith v. Gov't Emp. Ins. Co., 590 F.3d 886, 888 (D.C.Cir.2010). An "employer" is "any person [or public agency] acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Courts broadly construe this "unhelpful" definition to accomplish the Act's remedial purpose. Henthorn v. Dep't of Navy, 29 F.3d 682, 684 (D.C.Cir.1994); Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C.Cir.2001).

The Supreme Court has described "[t]he test of employment[ ]" as "economic reality rather than technical concepts[.]" Goldberg v. Whitaker House Co-op., Inc., 366 U.S. 28, 33, 81 S.Ct. 933, 6 L.Ed.2d 100 (1961); Morrison, 253 F.3d at 11. In this circuit, "economic reality" is assessed by asking four questions. Did the alleged employer: 1) have hiring and firing authority, 2) supervise and schedule employee work hours or conditions of employment, 3) determine the rate and method of payment, and 4) maintain employment records? Morrison, 253 F.3d at 11 (citation omitted). "No one factor standing alone is dispositive and courts are directed to look at the totality of the circumstances and consider any relevant evidence." Id.

■ It appears that the plaintiffs have failed to allege that Smith, the "Manager of [DOT's] New York Terminal," was their employer within the meaning of FLSA. (Pls.' Am. Compl. ("Compl.") ¶ 22.) Smith appears to meet the second prong of the test because she "was responsible for assigning overtime to DOT employees" and controlled the times at which drivers were to sign in and out. (Id. at ¶¶ 22, 45–46; see also id. at ¶¶ 59, 62.) The other factors weigh against deeming Smith the plaintiffs' employer. First, the plaintiffs plead no facts showing that Smith had the power to hire them. Indeed, the plaintiffs themselves aver that "DOT hired" them as bus attendants between 2002 and 2006, and that DOT subsequently employed them (emphasis added). (Compl. ¶¶ 19–21; see also id. ¶¶ 1–2, 13–16). Smith was authorized only to issue written warnings against plaintiffs (Compl.¶ 8), not to fire them outright. Second, the plaintiffs make no allegation that Smith determined the rate and method of payment or maintained employment records. Absent such allegations, the plaintiffs have not pled that Smith was their employer. The plaintiffs' FLSA claim for unpaid overtime compensation against Smith therefore appears to fail. Their FLSA claim for retaliation does likewise. See 29 U.S.C. § 215(a)(3). In order to state an anti-retaliation claim under the FLSA, the plaintiffs "must allege that [their] employer was aware that [they were] engaged in statutorily protected activity, that [their] employer took adverse action against [them], and that there was a causal relationship between the two." Cooke v. Rosenker, 601 F.Supp.2d 64, 72 (D.D.C.2009) (emphasis added).

## II. WHISTLEBLOWER ACT CLAIM

■ The D.C. Whistleblower[2] Protection Act ("DCWPA") now "provides that supervisors of District employees shall not threaten to take or take a prohibited personnel action or otherwise retaliate against an employee because of the employee's protected disclosure." *Winder v. Erste*, 566 F.3d 209, 213 (D.C.Cir.2009) (citing D.C.Code § 1–615.53 (2006)) (internal quotation marks omitted). However, at the time plaintiffs filed suit against Smith, whom they identify as their former supervisor (Compl. ¶¶ 3, 26), the DCWPA authorized suits against only the District of Columbia. *See, e.g., Payne v. District of Columbia*, 741 F.Supp.2d 196, 210–11 (D.D.C.2010) (stating that though the D.C. Council "amended the DCWPA in December 2009 to explicitly authorize actions against individual supervisors[,] . . . [plaintiff had] not cited, and the Court [had] not found, any indication that the D.C. Council intended its amendments to the DCWPA to be retroactive"); *Tabb v. District of Columbia*, 477 F.Supp.2d 185, 189 (D.D.C. 2007) (stating that "there is no implied right of action against supervisors under [the DCWPA]"). It appears, then, that plaintiffs have not pled a legally sufficient DCWPA claim against Smith.

## III. QUANTUM MERUIT CLAIM

■ The plaintiffs have likewise failed to plead a claim against Smith for *quantum meruit*, which the District of Columbia recognizes as an implied-in-fact contract. *United States ex rel. Modern Elec., Inc. v. Ideal Elec. Sec. Co.*, 81 F.3d 240, 246–47 (D.C.Cir.1996). To plead a claim, the plaintiffs must allege that defendant Smith's conduct implied the existence of a contractual relationship by establishing: 1) valuable services the plaintiffs rendered, 2) for the person from whom recovery is sought; 3) which services were accepted and enjoyed by that person, and 4) under circumstances which reasonably notified the person that the plaintiff, in performing such services, expected to be paid. *Plesha v. Ferguson*, 725 F.Supp.2d 106, 111 (D.D.C.2010)(citing *Jordan Keys v. Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 62 (D.C.2005)). The plaintiffs allege only that their overtime work constituted valuable services rendered to *DOT*. (Pls.' Am. Compl. ¶ 160.) Because the claim for *quantum meruit* does not allege that Smith accepted and enjoyed valuable services the plaintiffs rendered to her, this claim against Smith appears not to be well-pled.

## IV. DEFAMATION CLAIM

■ The plaintiffs allege that DOT's agents defamed the plaintiffs by conduct. (Compl. at ¶¶ 165–71.) In the District of Columbia, "a statement is defamatory if it tends to injure [the] plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Guilford Transp. Indus., Inc. v. Wilner*, 760 A.2d 580, 594 (D.C. 2000) (citation omitted) (alteration in original). To plead a defamation claim, the plaintiffs must allege "1) that the defendant made a false and defamatory statement concerning the plaintiff; 2) that the defendant published the statement without privilege to a third party; 3) that the defendant's fault in publishing the state-

---

**2.** Plaintiffs blew the whistle on the following alleged scheme, which Smith spearheaded against DOT employees of Haitian descent. After May of 2004, plaintiff Saint–Jean worked between 85 and 95 hours per week. (Pls.' Am. Compl. ¶ 29.) Smith increased Saint–Jean's hours to approximately 100 per week in August of that year, reflecting Saint–Jean's increased kickback payments. (*Id.* ¶ 31.) Smith likewise assigned plaintiff Dorlus increased overtime hours in December of 2005 and January of 2006, after Dorlus paid Smith between $100 and $150 per pay period. (*Id.* ¶¶ 34–35.)

ment amounted to at least negligence; and 4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Williams v. District of Columbia,* 9 A.3d 484, 491 (D.C. 2010) (internal quotation marks and citation omitted). However, "actionable defamation is not necessarily restricted to verbal conduct[.]" *Clampitt v. American Univ.,* 957 A.2d 23, 39 (D.C.2008) (citation omitted); *see also Wallace v. Skadden, Arps, Slate, Meagher & Flom,* 715 A.2d 873, 878 n. 5 (D.C.1998) (holding that defendant Skadden's inactivation of the plaintiff's access key could not "fairly be characterized as non-defamatory as a matter of law").

The plaintiffs bring their defamation claim against all defendants but plead no facts identifying Smith as an offending defamer. Instead, the amended complaint charges DOT agent Roberts with having defamed plaintiffs Bourciquot and Dorlus by suspending them for being AWOL on July 18, 2008, and by requiring a security guard to escort them out of the lot three days later in full view of their coworkers. (*Id.* at ¶¶ 166–67.) The amended complaint also alleges that DOT agents Hastings–Carey and Washington defamed plaintiffs Saint–Jean and Bourciquot by issuing written warnings and a written reprimand against them. (*Id.* at ¶¶ 168–169.) These allegations appear to state no claim for defamation against Smith.

### CONCLUSION

The plaintiffs appear to have failed to state a claim against Smith under the FLSA because she was not an employer within the meaning of the Act, under the DCWPA because only the District of Columbia could be sued under that statute at the time, for *quantum meruit* because the plaintiffs' services were rendered only to DOT, and for defamation because Smith is not identified as a defamer. Since default judgment can be entered upon only allegations that are legally sufficient to state a claim, it is hereby

ORDERED that the plaintiffs' motion [67] for default judgment be, and hereby is, DENIED. It is further

ORDERED that the plaintiffs show cause in writing by April 21, 2011, why the complaint should not be dismissed as to Smith for failure to state a claim for which relief can be granted.